ALBERT H. SCHWYHART, Respondent, v. MARTIN
A. BARRETT, FRANK NOVAK, H. L. REED
and the CHICAGO, ROCK ISLAND & PACIFIC
RAILWAY COMPANY, Appellants.

**Kansas City Court of Appeals, June 28, 1910.**

1. **REMOVAL OF CAUSES: Effect of Filing Petition Therefor.**
Upon proper application being made for the removal of a case
from a State to a Federal court, the State court should proceed
no further with the case.

2. ———: ———: **Duty of State Court.** The filing of a petition
and bond for removal presents to the State court a pure ques-
tion of law. If, admitting the facts stated in the petition for
removal to be true, it appears on the face of the record that
the petitioner is not entitled to a removal, the petition there-
for should be denied.

3. ———: ———. If the right of removal depends upon the
truth of the facts stated in the petition therefor, the State court
has no jurisdiction to determine the truth of those facts, but
must send the case to the Federal court, for its determination
thereof.

4. ———: ———: Separable Controversies. The fact that plain-
tiff's petition charges liability against individual defendants be-
cause of their own active negligence and charges liability
against the corporate defendant under the fellow-servant act,
does not create separable controversies, as between plain-
tiff and the respective defendants.

5. ———: ———: ———. The liability of a railroad company to
an employee for the negligent acts of a fellow-servant of such
employee under the fellow-servant act does not differ in
character from its liability in any other case falling within the
purview of the rule of *respondeat superior.*

6. ———: ———: ———. A defendant has no right to say that
an action shall be several which the plaintiff seeks to make
joint.

7. ———: ———: **Fraudulent Joinder: Sufficiency of Pleading.**
The petition for removal in this case is not subject to the ob-
jection that its allegations of fraudulent joinder state only a
conclusion, and not issuable facts.

Schwyhart v. Barrett.

8. ————: ————. An allegation in a petition for removal that individual defendants with small means were joined with a corporate defendant of great wealth for the mere purpose of preventing a removal does not present an issue of fraud. A party injured by the wrong of another has the right to seek a judgment at law against the wrongdoer, regardless of whether or not a judgment in the plaintiff's favor in such action could be collected.

9. ————: ————: ————. Plaintiff's motives should not be impugned from the bare fact that he chose to join solvent and insolvent defendants in the same action.

10. MASTER AND SERVANT: Negligence: Changing Method of Doing Work: Failure to Notify a Servant of Change. It had been the custom for plaintiff on prior occasions to uncouple the cars of a certain passenger train preparatory to the cars in the train being shifted and arranged in a different order. The uncoupling on such occasions had been done before any of the cars in the train were moved. On the occasion in question, on account of the crowded condition of the railroad yard where the train was standing, and on account of the hurry to get the switching done, the switching was not done in the usual manner, but a different engine was used, and it proceeded to do the switching before plaintiff had finished the work of uncoupling. These facts were known to the foreman in charge of the switching, but were not known to the plaintiff. The order to change the method of procedure was given by a train master in authority over all the other employees engaged. While the plaintiff was uncoupling the cars in his usual manner, the engine doing the switching moved against the train, thereby taking up the slack between the cars between which the plaintiff was working, and his head was caught between parts of the two cars, causing him serious injury. The foreman was negligent in failing to warn plaintiff that this switching was about to be done, and he is liable to the plaintiff for his negligence, and his company is also liable, whether such foreman be considered a fellow-servant or a vice-principal in the performance of such act.

11. MASTER AND SERVANT: Liability of Vice-Principal to Servant in Giving Proper Order Which is Negligently Performed. The trainmaster who gives an order for the movement of cars, which, if properly carried out, would not have caused injury, is not liable to a subordinate employee who was injured as the result of the negligent performance of those orders.

12. ————: ————: Liability of a Fellow-Servant. Where a switchman knows that his foreman knows that a coupling is about

to be made, and that such foreman is in a position to, and should, notify another switchman who is working between the cars that the coupling is about to be done, he has a right to assume that such foreman has performed such duty, and such switchman is not negligent in failing to give his fellow employee notice that such coupling is about to be made.

13. ——— : ——— : ——— : ——— : Contributory Negligence: Assumption of Risk. Whether or not under the facts in this case the plaintiff was guilty of contributory negligence or was injured as a result of an assumed risk, was a question of fact for the jury.

14. ——— : ———. A servant never assumes the risk of injury resulting from the negligence of the master.

15. PRACTICE: Instructions. Assuming Certain Acts to be Negligent. An instruction which tells the jury that if defendant committed certain acts it was guilty of negligence, is ordinarily erroneous, the question of negligence being for the jury.

16. ——— : ———. Negligence cannot be conclusively established, as a matter of law, upon a state of facts, when fair minded men of ordinary intelligence may differ as to the inferences to be drawn from such facts; and when the question of negligence rests upon even a conceded state of facts on which reasonable men might arrive at different conclusions, the question of negligence must be submitted to the jury. But where the facts will admit of no other reasonable inference than that of negligence, the court as a matter of law may pronounce the only conclusion permissible under the facts.

Appeal from Daviess Circuit Court.—*Hon. J. W. Alexander,* Judge.

AFFIRMED as to defendants, Martin A. Barrett and Chicago, Rock Island & Chicago Railway Company; REVERSED as to defendants, Frank Novak and H. L. Reed.

*Brown & Dolman* for appellants.

(1) Upon the filing of the petition for removal and removal bond in this case, the jurisdiction of the State court ceased *ipso facto,* and that of the Federal court immediately attached. No order of the State court is

necessary to confer jurisdiction of the Federal court, and no refusal of such an order can prevent that jurisdiction from attaching. 18 Ency. of Pl. and Pr., 347, 399; Beery v. Railroad, 64 Mo. 533; Stanley v. Railroad, 62 Mo. 508; Herryford v. Insurance Co., 43 Mo. 148. (2) All questions of fact made upon the petition for removal must be tried in the Federal court. The petition presents to the State court the question of law only, whether assuming the facts stated to be true it discloses a removable case. Carson v. Hyatt, 118 U. S. 279; Stone v. South Carolina, 117 U. S. 430; Carson v. Dunham, 121 U. S. 421; Railroad v. Dunn, 122 U. S. 513; Crehore v. Railroad, 131 U. S. 240; Railroad v. Adams (Ark.), 112 S. W. 186; McAlister v. Railroad, 157 Fed. 740; Donovan v. Wells, Fargo & Co., 169 Fed. 363. (3) The allegation of fraudulent joinder in this case is sufficient. Wecker v. Enameling, etc., Co., 204 U. S. 176. (4) There is nothing in the evidence tending to show any negligence on the part of trainmaster Reed, or that he failed in the performance of any duty he owed to the plaintiff. Relyea v. Railroad, 112 Mo. 86; Golden v. Seeghardt, 53 N. Y. Sup. 461. Hassey v. Coger, 112 N. Y. 614; Besel v. Railroad, 70 N. Y. 171; Railroad v. Dolan, 32 Mich. 510; Railroad v. Keegan, 160 U. S. 259; Ryan v. Railroad, 23 Pa. 384; Bowen v. Railroad, 95 Mo. 268. (5) Nothing is better settled than that the fact of the injury is not sufficient to fix the liability of the defendant in cases of this character. The burden is upon the plaintiff to prove affirmatively the negligence which produced it. Dowell v. Guthrie, 116 Mo. 646; Ryan v. McCully, 123 Mo. 636; Glasscock v. Dry Goods Co., 106 Mo. App. 657; Yarnell v. Railroad, 113 Mo. 570; Sanders v. Railroad, 147 Mo. 411. (6) Each of the instructions given for plaintiff tells the jury directly and unequivocally that if the freight engine was used to do the switching without notice to or knowledge of the plaintiff the act amounted to negligence *per se.* This was error. So far as this act was

evidence of negligence it was for the jury to determine its effect. Huelsenkamp v. Railroad, 34 Mo. 45; Barton v. Railroad, 52 Mo. 253; Gage v. Transit Co., 211 Mo. 139; Kreimelmann v. Jourdan, 107 Mo. App. 64; Dowell v. Guthrie, 99 Mo. 653; Gratiot v. Railroad, 116 Mo. 450.

*K. B. Randolph, Boyd Dudley* and *I. A. Selby* for respondent.

(1) This case is not removable. Lanning v. Railroad, 196 Mo. 656; Johnson v. Railroad, 203 Mo. 398; Stotler v. Railroad, 200 Mo. 118; Railroad v. Dixon, 179 U. S. 131; Railroad v. Thompson, 200 U. S. 206; Railroad v. Bohon, 200 U. S. 221. (2) The right of removal is wholly statutory and the State court is not ousted of its jurisdiction unless the cause is properly removable. It is not sufficient that jurisdiction may be inferred argumentatively from averments in the pleadings, but it must appear positively, and this is true whether the jurisdiction is invoked upon the ground of diverse citizenship, or otherwise. Hanford v. Davis, 163 U. S. 273; Bors v. Preston, 111 U. S. 252; Mansfield v. Swan, 111 U. S. 379; Grace v. Insurance Co., 109 U. S. 278; Steamship Co. v. Tugman, 106 U. S. 118, 27 Law Ed. 87; Johnson v. Wells Fargo Co., 91 Fed 4; Railroad v. Carson, 194 U. S. 138; 48 Law. Ed. 910. (3) All doubts are to be resolved in favor of the jurisdiction of the State court. Fitzgerald v. Railroad, 45 Fed. 819; Nash v. McNamara, 145 Fed. 541; Kessinger v. Vannatta, 27 Fed. 890; Ernest v. American S. M. Co., 114 Fed. 981; Railroad v. Davidson, 157 U. S. 208; Hanrick v. Hanrick, 153 U. S. 192; Shaw v. Quincy Mineral Co., 145 U. S. 444. (4) No presumptions can be indulged in favor of the jurisdiction of the Federal court. It must be a removable cause and the necessary jurisdictional facts must appear on the face of the pleadings and where they do not appear, the fact

of the filing of a petition for removal in no wise affects the jurisdiction of the State court. 18 Ency. Pl. and Pr., 297. (5) The Federal court cannot supply omissions by intendment or by taking judicial notice of outside facts. The question as to whether there is a separable controversy is to be determined by the condition of the record in the State court and the facts necessary to give jurisdiction to the Federal court must appear upon the face of the plaintiff's petition. They cannot be supplied by a petition for removal or subsequent pleading unless fraud be specifically averred and proved. Arkansas v. Coal Co., 183 U. S. 189; Mountview Co. v. McFaddin, 180 U. S. 535; Railroad v. Mills, 113 U. S. 257; Tenn. v. Bank, 152 U. S. 460; Thomas v. Railroad, 147 Fed. 83; Knuth v. Butte Electric Co., 148 Fed. 73; McMillen v. Noys, 146 Fed. 926; Railroad v. Vincent, 116 Tenn. 317; Railroad v. Leggett, 162 Fed. 571. (6) The allegations of the petition are taken as confessed, in determining whether the controversy is separable, on application for removal to the Federal court. Railroad v. Lucinda Wangelin, 132 U. S. 602; Railroad v. Grayson, 119 U. S. 240; In re Jarnecke Ditch, 69 Fed. 171; Cane v. Indianapolis, 82 Fed. 772; Evans v. Felton, 96 Fed. 176. (7) The statement in the petition for removal that the defendants Reed, Novak and Barrett were made defendants for the sole and fraudulent purpose of preventing removal, etc., presents no issuable fact, only a conclusion, being unsupported by any specific statement of facts on which it is based and amounts to nothing and will be disregarded. Little York Gold Co. v. Keys, 96 U. S. 190, 24 Law. Ed. 656; Bank v. Ford, 114 U. S. 635, 29 Law Ed. 261; Hambledom v. Dunham, 22 Fed. 465; Railroad v. Dixon, 179 U. S. 131; Carson v. Dunham, 121 U. S. 421. (8) The fact that defendants Barrett, Reed and Novak are not so able to respond in damages, even if it be true, would not make the joinder fraudulent. The plaintiff

had the right to join them if he desired. On the face of the plaintiff's petition they were jointly liable. Min. Co. v. Amador Canal Co., 118 U. S. 264; Railroad v. Lucy McBride, 141 U. S. 127. (9) Whether upon the facts the plaintiff is entitled to recover is not a matter of jurisdiction but one of the merits of the controversy. Hax v. Saspar, 31 Fed. 499; Evans v. Fulton, 96 Fed. 176; Insurance Co. v. Railroad, 101 Fed. 507; Fogarty v. Railroad, 123 Fed. 973; Railroad v. McBride, 141 U. S. 127, 35 Law Ed. 660; Thomas v. Railroad, 147 Fed. 83; Insurance Co. v. Railroad, 101 Fed. 510. (10) The position taken by appellant that common law and statutory negligence cannot be joined in one count, even if Novak and the plaintiff were fellow servants, is out of line with the statute and the current of authority and is not the law. R. S. 1899, sec. 545; Myers v. Transit Co., 99 Mo. App. 363; Senn v. Railroad, 135 Mo. 512; Gebhardt v. Railroad, 97 Mo. App. 373; Berger v. Railroad, 112 Mo. 238; Wacher v. Transit Co., 108 Mo. App. 645; Holden v. Railroad, 108 Mo. App. 665; Sluder v. Transit Co., 189 Mo. 107; Rapp v. Transit Co., 190 Mo. 144; Clancy v. Transit Co., 192 Mo. 615; Haley v. Railway, 197 Mo. 15. (11) The sudden backing of the cars without warning to a servant in a position of danger is negligence on the part of the railroad company. Spotts v. Railroad, 3 Mo. 380. (12) The fact that the servant's work is done in the presence of and under the immediate direction of the master foreman is equivalent to an assurance that the servant may safely proceed with it. He is not bound in such case to search for danger, but may rely for his safety on the judgment of the foreman. Sullivan v. Railroad, 107 Mo. 66; Herdler v. Buck Stove Co., 136 Mo. 3. (13) The servant assumes only such risks as are ordinarily incident to his employment, but does not assume the risk of the negligence of the master nor the negligence of fellow servants. Blanton v. Dold, 109 Mo. 64; Henry v. Railroad, 109 Mo. 488; Herdler v. Buck Stove Co.,

supra. (14) Taking a position in a line of duty is not negligence on the part of the servant unless the danger is present and apparent. Murphy v. Railroad, 115 Mo. 111. (15) Where a servant is injured in the performance of an act incident to the duties of his employment in the usual manner, he is held to have assumed the risk, but if the mode adopted by the master is unusual and the servant is injured by reason thereof, the servant does not assume the risk and the master is liable for damages, suffered by the servant. Benedict v. Railroad, 104 Mo. App. 218; Blanton v. Dold, 109 Mo. 64; Henry v. Railroad, supra; Herdler v. Buck Stove Co., supra. (16) It makes no difference if the plaintiff did assume a dangerous position, if injury would not have resulted except for the negligence of defendant. Meyer v. Railroad, 59 Mo. 223; Walsh v. Miss. Trans. Co., 52 Mo. 434; Smith v. U. R. Co., 61 Mo. 588; Moore v. Railroad, 126 Mo. 265; Dowell v. Guthrie, 99 Mo. 653; Fulks v. Railroad, 111 Mo. 335; Lynch v. St. Car Co., 112 Mo. 420; Langan v. Railroad, 72 Mo. 392; Dickson v. Railroad, 124 Mo. 140; Kleiber v. Railroad, 107 Mo. 240; McPeak v. Railroad, 128 Mo. 617; Sinclair v. Railroad, 133 Mo. 233; McGee v. Railroad, 92 Mo. 208. (17) The presence of the master is an assurance of safety. When plaintiff entered between the cars under the direction of and with Barrett the foreman he had a right to assume that it was safe to do the work at the usual time and in the usual way and he did not assume the risk of an unusual course adopted by the master or negligent direction of the work. Schroeder v. Railroad, 108 Mo. 322; Benedict v. Railroad, 104 Mo. App. 218; Nash v. Dowling, 93 Mo. App. 156; Spotts v. Railroad, 111 Mo. 384; Sullivan v. Railroad, 107 Mo. 66; Herdler v. Stove Co., 136 Mo. 3; Monahan v. Railroad, 58 Mo. App. 68; Higgins v. Railroad, 43 Mo. App. 547; Fogus v. Railroad, 50 Mo. App. 250; Blanton v. Dold, 109 Mo. 64; Henry v. Railroad, 109 Mo. 489; Kennedy v. Gas Co., 215 Mo. 703; Zellars v. Mo. Water

& L. Co., 92 Mo. App. 119; Bane v. Irwin, 172 Mo. 316; Combs v. Construction Co., 205 Mo. 381; Smith v. Kansas City, 125 Mo. App. 157; Rigsby v. Oil Well Supply Co., 115 Mo. App. 316; Brady v. Railroad, 206 Mo. 509. (18) The duty of notification rests upon the master where a change is made in the method or manner in which the work is performed, and the failure to notify the servant when an unusual method or instrumentality is adopted renders the master liable. Chambers v. Chester, 172 Mo. 461; Dayharsh v. Railroad, 103 Mo. 571. (19) When the facts in the case are undisputed or conclusively established and there is no reasonable chance of drawing different conclusions from them, the question becomes one of law for the court. 16 Am. and Eng. Ency. of Law, 466; Fletcher v. Railroad, 64 Mo. 488; Boland v. Kansas City, 32 Mo. App. 14; 1 White, Personal Injuries on Railroads, sec. 36; Hoag & Lake Shore v. Railroad, 85 Pa. St. 393, l. c.; 27 Am. Rep. 653; Railroad v. Kerr, 62 Pa. 353; Cooley on Torts (2 Ed.), 803; 29 Cyc. 629; District of Columbia v. Moulton, 182 U. S. 579; Railroad v. McDonald, 152 U. S. 262. (20) There can be no just criticism of the instructions because of the omission of the word negligence, or similar words, in those paragraphs relating to defendants, Reed, Novak and Barrett. Such words are not necessary and the failure to use them is not error. Bond v. Railroad, 122 Mo. App. 217; McCaffery v. Railroad, 192 Mo. 155; Luckel v. Century Building Co., 177 Mo. 626; Swigert v. Railroad, 75 Mo. 479.

JOHNSON, J.—This action is to recover damages for personal injuries which plaintiff alleges were caused by the negligence of the defendants. A trial to a jury resulted in a verdict and judgment for plaintiff in the sum of $7500, against all of the defendants. An appeal was granted to the Supreme Court where jurisdiction on appeal was lodged, but during the pendency of the cause in that court, the General Assembly approved an

Act enlarging the jurisdiction of the Courts of Appeals (Laws of Mo. 1909, p. 397), and the cause was transferred to this court under the provisions of that Act. Objections offered by defendants to the transfer were disposed of adversely to them in an opinion written by VALLIANT, J., 223 Mo. 497, to which we refer for a statement of the grounds of our jurisdiction.

The injury occurred about 8:45 p. m., January 14, 1905, at Altamont, at the junction of defendant railway company's St. Joseph branch road with its main line. Plaintiff was a "hostler" employed in the yards and it was one of his duties to go between the cars of the passenger train scheduled to arrive from St. Joseph at 8:45 p. m. to uncouple the safety chain, steam, air-brake and signal hose. A Pullman sleeping car running from St. Joseph to Chicago was brought in by this train and transferred to the through train which came from Kansas City. Usually the necessary switching of the sleeping car was done by the locomotive of the St. Joseph train which was detached and run back for that purpose, but on this occasion, owing to the crowded state of the yards, this locomotive was so hemmed in that it could not be used for switching without delaying the departure of the through train and the locomotive of a freight train was detached and employed to switch the sleeping car. Plaintiff knew the engine of the St. Joseph train had not been uncoupled but did not know that the freight engine had been assigned to do the switching. The trainmaster (defendant Reed) who had control over the movement of trains at Altamont, happened to be there and ordered defendant Barrett, who was foreman of the yards, to use the freight engine to do the switching. Without telling plaintiff, who was a subordinate, of the order, Barrett proceeded to have it executed and, aided by plaintiff, started to do the necessary uncoupling between the cars of the St. Joseph train. Barrett went between the cars on one side, plaintiff on the other. While they were at work be-

tween two cars and plaintiff was stooping, the freight engine, which had been signalled to come on by defendant Novak (a brakeman of the St. Joseph train), backed into the sleeping car with enough force to take out some, if not all, of the slack of the train. As one of the results, plaintiff's head was caught and severely squeezed by the contraction of the space between some of the appliances or attachments at the ends of the cars.

The petition alleges "it was usual and customary and was the rule at the Altamont railroad yards to uncouple the engine of the St. Joseph passenger train, run it down to the cut-off between the St. Joseph track and passing track, and back the engine onto the passing train, and up to the point where the passing track connects with the St. Joseph track, and thence easterly onto the St. Joseph track, so as to couple on the Pullman sleeping car from the St. Joseph train, and to place it on the Kansas City track and attach it to the Kansas City eastbound train. It was also the rule and custom in said yards not to couple the said engine onto said Pullman car until after the plaintiff had completed his work in uncoupling the cars and the safety chain, and air-brake, steam and signal hose, between each of the cars of said train, including said Pullman car and it was also the rule and custom to begin at the engine and proceed toward the back of the train with each successive coupling. . That it was also necessary and was the rule and custom in said yards to disconnect all of the cars of the St. Joseph train and switch them so that the train would be headed west for its departure in the morning. ' . . . That the said freight engine was a very large and heavy engine, and was backed and pushed against said passenger train, negligently and with great force and violence, so that the slack between the cars where the plaintiff was at work was entirely taken up, and the cars were removed violently and suddenly, and without notice to the plaintiff and without any opportunity on his part to escape from danger.

That the defendant Reed, as trainmaster, carelessly and negligently ordered said work to be done, in the unusual manner aforesaid, well knowing that the plaintiff's duties required him to go between the cars and that unless notified he would only keep watch of the engine of the St. Joseph passenger train, and being present in person at the Altamont railroad yards and carelessly and negligently failed to give to the plaintiff any warning or notice whatever. That the defendant, Martin A. Barrett, as foreman, carelessly and negligently ordered and led the plaintiff into such dangerous situation, without giving to him any warning of danger, although he well knew of plaintiff's danger and the unusual way by which the said Pullman car was to be switched, and by his orders and presence, assured the plaintiff that the work could safely be proceeded with, when by the exercise of ordinary care and prudence on the part of said defendant Barrett, the injury to plaintiff could have been avoided. That the defendant, Frank Novak, although he knew, or by the exercise of ordinary care and prudence on his part must have known, of the dangerous situation of the plaintiff, carelessly and negligently signalled said freight engine to back against and onto the said St. Joseph passenger train, without in any manner warning the plaintiff of his dangerous situation, as it was his duty to do. That said work was negligently and carelessly performed, that the defendants and that the officers, agents and servants of the defendant railway company as well carelessly and negligently failed and neglected to warn plaintiff of his dangerous situation, and all the defendants failed in their duty toward the plaintiff, and that by reason of such negligence and carelessness of the defendants and all of them, the plaintiff was caught with his head between the cars aforesaid, each of the said cars coming in violent contact with his head, so that he was greatly and dangerously and permanently wounded and injured by the carelessness and negligence of the defendants as

aforesaid," etc. The prayer of the petition was for damages in the sum of $15,000.

The defendants answered separately, pleading assumed risk and contributory negligence in addition to a general denial. Before answering the railway company filed a petition and bond for the removal of the cause to the United States Circuit Court. This defendant was an Illinois and Iowa corporation; plaintiff was a citizen and resident of Missouri, as were also the individual defendants. The grounds alleged for removal were, first, that the action between plaintiff and the petitioner is a separable controversy and that the petitioner is entitled to a removal on account of diverse citizenship and, second, because the individual defendants, Barrett, Novak and Reed "were joined in this action by the plaintiff for the sole and fraudulent purpose of defeating and preventing this defendant, your petitioner, from removing his action from the State court in which it is now pending, to the United States Circuit Court, . . and for the sole and fraudulent purpose of defeating said jurisdiction of' said United States Circuit Court in this action." It is alleged, among other things, that the individual defendants "are men of small means, and have no, or but little property from which a judgment against them, or either of them, in this action, if such were recovered, could be collected, and that this defendant is, and was at the time of the institution of this action, entirely solvent and able to pay any debts that may exist against it, and to pay any judgment which might be recovered against it in this action; that it had a large amount of property, and more than sufficient to pay the amount sued for in this action within the jurisdiction of this court and according to the allegations in plaintiff's petition, any act of negligence on the part of the defendants, Martin A. Barrett, Frank Novak and H. L. Reed, alleged to have produced the injury to this plaintiff, was an act of this defendant, and accordingly this defendant is responsible and liable for the same."

Plaintiff answered this petition, denying "each and every allegation of fact stated in said petition for removal as a ground for removal except such facts as appear upon the face of the plaintiff's petition," and averring that "it is not true as alleged by said defendant that 'Martin A. Barrett, Frank Novak and H. L. Reed were joined as defendants in this action by the plaintiff for the sole and fraudulent purpose of defeating and preventing the petitioner from removing this action from the State court.'"

The petition for removal was verified by an agent of the petitioner but no other affidavits or proof of any kind were offered in support thereof. The court overruled the petition and defendant company duly excepted. Our first concern shall be the contention of the railway company that the trial court erred in denying the petition for a removal and in proceeding to exercise jurisdiction over the cause.

The well-settled rule, often recognized by the courts of this State, is that upon proper application being made for a removal of a cause from a State to a Federal court, the State court should proceed no further with the cause and any attempt in that direction will be pronounced *coram non judice.* [Berry v. Railroad, 64 Mo. 533; Stanley v. Railroad, 62 Mo. 508.] "The record closes so far as the question of removal is concerned when the petition for removal is filed and the necessary security furnished. It presents then to the State court a pure question of law and that is whether, admitting the facts stated in the petition for removal to be true, it appears on the face of the record, which includes the petition and the pleadings and proceedings down to that time, that the petitioner is entitled to a removal of the suit.

"That question the State court had the right to decide for itself and if it errs in keeping the case, and the highest court of the State affirms its decision, this court has jurisdiction to correct the error, considering

for that purpose, only the part of the record which ends with the petition for removal." [Railway v. Dunn, 122 U. S. 513.]

"The mere filing of a petition for the removal of a suit which is not removable, does not work a transfer." [Crehore v. Railway, 131 U. S. 240.]

Under these rules, the trial court had the right to examine the papers and, if they did not disclose on their face the existence of a removable cause, was justified in refusing to surrender jurisdiction. Counsel, to maintain their contention that the action is severable, not joint, point out that liability of the railway company exists, if at all, by virtue of section 2875, Revised Statutes 1899, commonly called the Fellow Servant statute, while the liability of the several individual defendants rests not on that statute but on the common law. But nothing is lacking to complete the analogy in principle and rule between the present case and those cases determined by our own Supreme Court in Lansing v. Railway, 196 Mo. 647; Johnson v. Railway, 203 Mo. 381; Stotler v. Railway, 200 Mo. 107, and by the Supreme Court of the United States in Railroad v. Rixie, 179 U. S. 131; Railroad v. Thompson, 200 U. S. 206; Railroad v. Bohon, 200 U. S. 221.

Perhaps the most instructive of these cases is Railroad v. Thompson, where the plaintiff sued the railroad company and the engineer and conductor of the train. The following questions were put to the court for decision: "1. May a railroad corporation be jointly sued with two of its servants, one the conductor and the other the engineer of one of its trains, when it is sought to make the corporation liable only by reason of the negligent act of its said conductor and engineer in the operation of a train under their management and control, and solely upon the ground of the responsibility of a principal for the act of his servant, though not personally present or directing and not charged with any concurrent act of negligence?

"2. Is such a suit removable by the corporation, as a separable controversy, when the amount involved exceeds two thousand dollars, exclusive of interest and costs, and the requisite diversity of citizenship exists between the said company and the plaintiff, the citizenship of the individual defendants sued with the company as joint tortfeasors being identical with that of the plaintiff?"

The court noticed with apparent disapproval the sometime rule followed by Federal courts "that a joint action could not be sustained against master and servant for acts done without the master's concurrence or directions, when his responsibility arises wholly from the policy of the law which requires that he shall be held liable for the acts of those he employs in the prosecution of his business."

That rule must be the mainstay of the defendant company's argument here since, in the present case, as in those to which we are referring, the liability of the individual defendants rested on their wrongful acts while that of the corporation defendant sprung from the rule of *respondeat superior*. The only office of the fellow-servant statute was to include fellow-servants among those for whose torts the master would be liable. Neither in character nor in the rules and principles by which it is controlled does a cause of action for the tort of a fellow-servant differ from any other cause falling within the purview of the rule of *respondeat superior*. The central idea of the Thompson case is that "a defendant has no right to say that an action shall be several which the plaintiff seeks to make joint," and in the application of that rule, the Supreme Court decided that since the face of the papers disclosed the assertion of a joint action, there was nothing in the relationship of master and servant to preclude them from being held jointly liable for the tort of the servant. But, invoking the rule that "all issues of fact made upon the petition for removal must be tried in the Circuit (Federal)

Court" (Carson v. Hyatt, 118 U. S. 279), counsel direct our attention to their contention that the averments that the resident defendants were joined for the fraudulent purpose of defeating the company from removing the cause to raise an issue of fact which only the Federal court might try and determine. Plaintiff answers that "The statement in the petition for a removal that the defendants Reed, Novak and Barrett were made defendants for the sole and fraudulent purpose of preventing a removal, presents no issuable fact, only a conclusion. Being unsupported by any specific statements of facts on which it is based it amounts to nothing and will be disregarded," citing Gold Company v. Keys, 96 U. S. 199; Bank v. Ford, 114 U. S. 635, and other cases.

We think the petition rightly construed does plead the specific facts from which the pleader draws the conclusion that the joinder was fraudulent, but that the facts pleaded do not reasonably support the conclusion the pleader would draw from them. We have disposed of the averments to the effect that the liability was not joint and find that, in substance, the only remaining facts on which the conclusion is founded are that the individual defendants are men of small means and that the defendant company is solvent and of great wealth. These facts alone would not support a conclusion of fraud. A person injured by the wrong of another has a right to seek a judgment at law against the wrongdoer regardless of the question of whether he can collect the judgment if one should be recovered. [Stotler v. Railroad, supra.] A plaintiff's motives should not be impugned from the bare fact that he chooses to join solvent and insolvent defendants in the same action. With all of the facts alleged conceded to be true, the conclusion of fraud still would fail for lack of support. We conclude that the learned trial judge was right in holding that the petition for a removal fails to disclose a removable cause.

Passing to the merits of the case, the first questions to engage our attention are those arising from the insistence that the court should have peremptorily instructed the jury to find for the defendants. The facts already stated were collected from the evidence of plaintiff. Other material facts disclosed by that evidence are as follows: Ordinarily the train from St. Joseph arrived some minutes before the through train in order that the latter might not be delayed by work preparatory to the transfer of passengers, baggage, express, etc. But on this occasion the St. Joseph train was late and did not arrive until after the arrival of the through train. It was run up alongside the through train and stopped with the door of the baggage car opposite that of the baggage car of the through train. A gang plank was thrown across and the baggagemen began the transfer of baggage. Freight cars were on the track in front of the St. Joseph train and it was apparent to everyone, including plaintiff, that the engine of that train was blocked so that it could not be used in switching the sleeping car. The weather was very cold, the yards were congested and haste was required in doing the work necessary before the through train could depart. Under ordinary conditions, plaintiff and Barrett were done with their task of uncoupling the St. Joseph train before the engine of that train could get around to the sleeping car, but on this occasion the freight engine was close at hand and did not wait for them to finish their work before it coupled on to the sleeping car. The freight engine was large and heavy, but the evidence does not show that the impact of its collision with the sleeping car was unusually violent or severe, though it was hard enough to take some of the slack out of the St. Joseph train. It does not appear that the injury was caused by the severity of the impact but by the fact that plaintiff was not expecting the blow and was caught unawares with his head in a dangerous place. The accusations of negligence

thus are stated in plaintiff's brief: "The negligence charged against Barrett is failure to notify plaintiff of the intention to use the unusual engine and leading him into danger. He does not pretend that he notified plaintiff. There is no conflict as to this. The negligence charged against Novak is signalling the engine back at a premature time without notice to plaintiff. There is no conflict as to this. The negligence charged against Reed is ordering the unusual engine to be used without notifying or providing for notice and there is no pretention that he did so." We shall consider these charges in reverse order.

We say, as a matter of law, that Reed is not shown by the evidence to have been negligent. He was guilty of no breach of duty towards plaintiff. As trainmaster, he was the company's ranking official at the scene and gave the order which, in being executed, resulted in the injury to plaintiff, but he was not required to follow that order through the details of its execution. The order implied directions to those charged with its execution to exercise reasonable care and it was not incumbent on this general officer to follow in the footsteps of each subordinate to see that he properly performed his duty. Railroads could not be operated if executive officers were duty bound to stop and work out the details of every movement to be executed in the handling of trains. As is well said by the court of appeals in Cullen v. Norton, 126 N. Y. 1: "The manner of the performance of each of the various details of the work by which, as a whole, it is to be conducted, rested necessarily upon the intelligence and care and fidelity of the servants to whom these duties were entrusted." To the same effect is the decision of our own Supreme Court in Relyea v. Railway, 112 Mo. l. c. 95, where it is said: "It was necessary and proper for the conductor to go to the station, and to give orders as to the movement of the train, but it was out of all reason to say that he was in duty bound to follow up each brakeman and

see how each movement was executed. There is in our opinion no evidence to show, or tending to show, that the conductor was guilty of any negligence whatever."

Nor does the evidence accuse Novak of negligence. He acted as the pilot of the freight engine and gave the signal for it to come for the sleeping car. He knew that Barrett and plaintiff were at work between cars, but Barrett, the foreman of plaintiff, also knew of the order and that the engine would be moved on Novak's signal. The increased danger to plaintiff consisted not in making the coupling while he was between the cars but in making it without warning him, and we think that Novak was entitled to act on the presumption that Barrett had warned plaintiff and that plaintiff, though between the cars, was expecting an ordinary shock and was prepared to meet it as was Barrett. It would be unreasonable to say that Novak should have assumed that Barrett might fail to perform his duty towards plaintiff. To so hold would be to announce a rule which, if observed, would greatly interfere with the practical and efficient operation of railroad trains.

As to the negligence of Barrett, there can be no doubt under the evidence of plaintiff. He should have told plaintiff of the order that the latter might protect his safety either by refusing to go between the cars while the coupling was being made, or, if he went in, by keeping his body from places where it might be caught by the contraction of the space it occupied. He was given no opportunity to look out for himself and Barrett is the man whose duty it was to see that he had such opportunity. Whether Barrett was a fellow-servant of plaintiff or a vice-principal of the defendant company, his negligence was also the negligence of their common master.

We cannot say, as a matter of law, that plaintiff was guilty of contributory negligence. Under all the facts and circumstances disclosed, his conduct is presented as an issue of fact for the triers of fact to solve.

Nor do we agree with defendants that the injury was due to a risk assumed by him as a part of his contract of employment. Our recent decision in Lancaster v. Railway, 143 Mo. App. 163, disposes of this question. It follows from what we have said that the demurrers to the evidence offered by defendants Barrett and the railway company were properly overruled, and that those asked by the remaining defendants should have been sustained.

The principal objection to the instructions given at the request of plaintiff is that "each of the instructions given for plaintiff tells the jury that if the freight engine was used to do the switching without notice to or knowledge of the plaintiff, the act amounted to negligence, *per se.* This was error. So far as this act was evidence of negligence, it was for the jury to determine its effect."

The hypothesis on which the instructions directed a verdict did not omit the specific finding that the failure to warn plaintiff of the change in the custom by which the freight engine was substituted for the engine of the St. Joseph train, was negligence, but we think the state of facts submitted, if found to exist, would indisputably lead to the conclusion of negligence.

The rule cannot be gainsaid that "Negligence cannot be conclusively established, as a matter of law, upon a state of facts on which fair-minded men of ordinary intelligence may differ as to the inferences to be drawn from it; and when the question of negligence arises upon even a conceded state of facts from which reasonable men might arrive at different conclusions, it must be submitted to the jury and if the inferences to be drawn from the evidence are not certain or incontrovertible, the question of negligence cannot be passed upon by the court." [Gratiot v. Railway, 116 Mo. 450.] But where, as here, the facts included in the hypothesis will admit of no other reasonable inference than that of negligence, the court as a matter of

law may pronounce the only conclusion permissible under the facts (Luckell v. Building Co., 177 Mo. l. c. 672), where it is said by GANTT, J., "When reasonable men may fairly differ on the question the courts do not assume to decide as a matter of law that certain facts constitute negligence, but the proper conclusion to be drawn from a conceded state of facts admitting of but one inference is a question of law. Hence when the court submitted to the jury in this case the finding of the facts above stated and then advised that if they so found they should return a verdict for plaintiff, it in no manner usurped the province of the jury."

Other objections urged against the instructions have been examined and are ruled against the contention of defendants. We find no prejudicial error against the defendants Barrett and the Railway Company and, as to them, the judgment is affirmed. As to defendants Reed and Novak, the judgment is reversed. All concur.