## MRS. S. H. WEAVER, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, THE PULLMAN COMPANY and EDWARD SCANLON, Appellants.

### Kansas City Court of Appeals, April 7, 1913.

1. **NEGLIGENCE:** .Personal Injuries: Car Cleaners. The plaintiff sued to recover damages for personal injuries received while she was employed as a cleaner of Pullman cars, on a train called the "Meteor." While she was performing her duties, the railroad company uncoupled the smoking car, from the one in which she was washing and had it repaired. When the smoking car was brought back, it was coupled on the train without warning to the plaintiff; and with such force that she was thrown from the top of a step-ladder to the floor of the car and injured. *Held*, that the defendants, the railroad company, and the Pullman Car Company both were recreant, and neither should be heard to excuse itself on the plea that the other was at fault.

2. ————: ————: **Master and Servant: License by Invitation.** The plaintiff was not the servant of the railroad company, and, of course, was not subject to the orders of that company, except such orders as were approved and adopted by her master for her guidance and protection, but she was on the property of the railroad company, not as a trespasser or licensee by sufferance but as an invitee or, as a licensee by invitation.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas*, Judge.

AFFIRMED.

*Cowherd, Ingraham, Durham & Morse,* and *Lathrop, Morrow, Fox & Moore* for appellants.

*F. W. Coon* and *Bird & Pope* for respondent.

JOHNSON, J.—This is an action to recover damages for personal injuries plaintiff alleges were caused by negligence of the defendants, the St. Louis & San Francisco Railroad Company, the Pullman Company and Edward Scanlon. Separate answers were filed and issues were raised by the pleadings which were subjects of controversy at the trial, not only between plaintiff and defendants, but among the defendants themselves. At the close of the evidence the court sustained the request of defendant Scanlon for a peremptory instruction and plaintiff took an involuntary nonsuit as to him. The separate demurrers to the evidence offered by the remaining defendants were overruled and the case was submitted to the jury. A verdict was returned in favor of plaintiff against both defendants and, after unsuccessfully moving for a new trial and in arrest of judgment, both appealed.

Plaintiff was injured May 12, 1909, in the yards of the defendant railroad company in Kansas City. She was a car cleaner employed by the Pullman Company and was discharging the duties of her employment when she was injured by the sudden movement of the car in which she was working. The Pullman Company operates sleeping cars which form a part of the equipment of passenger trains operated by the defendant railroad company in and out of Kansas City. One of these trains, called the "Meteor" runs between Kansas City and Memphis, arriving at Kansas City every day at about 8:30 a. m. and leaving for Memphis in the evening. The train contains eight cars, three of which are sleeping cars owned by the Pullman Company and placed at the rear of the train. The mail, baggage, smoking and chair cars are in front. The train comes into the passenger station from the south and after unloading, backs into the yards of the railroad company where the cars are separated and

switched into position for the return trip. After it is "made up" the train is left on a switch track known as "number 7" and the car cleaners begin their work which usually is completed by noon. Seven or eight cleaners are employed by the Pullman Company, four of whom are women. At the time of the injury Scanlon was the foreman of the Pullman Company and had control over the cleaners. He had employed plaintiff about eight months before the injury and had instructed her in her duties. She was required to begin work at seven o'clock in the morning and her first task was to clean a sleeping car that came in on an early train and then to work on the "Meteor" which, as stated, was always placed on track numbered 7, and always contained the same number and kinds of cars. Her work was restricted to the Pullman cars and she had no interest in any other part of the train.

Plaintiff testified that prior to the event in question the train which practically filled track No. 7 had never been disturbed during the time allotted for cleaning the cars and she is corroborated on this point by other witnesses. It appears from the testimony of other witnesses, who were better qualified than plaintiff to speak of the rules and customs of the yard, that while no other switching was done on this track, it was the practice of the employees of the railroad company, when the occasion demanded, to do switching connected with the "Meteor" train even at times when its cars were being cleaned. No such occasion had arisen during the period of plaintiff's service and she had no knowledge of the practice. But on the morning of the injury it was discovered by the car inspectors that the smoking car needed some repairs and that car, together with the mail and baggage cars, was switched to the repair track and only the five remaining cars of the train, including the Pullmans, were set on track No. 7. Plaintiff and the other cleaners went to work as usual and were cleaning the cars

when the railway company's employees switched the cars from the repair track to track No. 7 and coupled them to the train. At that moment plaintiff was standing on the top of a small stepladder, washing the ceiling of a toilet room. The jar of the collision which accompanied the bringing together of the two parts of the train was not violent or unusually severe, but it was severe enough to throw plaintiff from the top of the ladder to the floor and injure her. No warning was given by the railroad company's servants of their purpose to make the coupling and it does not appear in evidence that their conduct was in violation of any rule or custom of the yard. There was a rule that forbade the disturbance of cars on which a certain kind of flag was displayed but this rule had not been used for the protection of car cleaners. The servants of the railroad company must have known that the cleaners were at work and we think that Scanlon, the Pullman Company's vice principal, who was in and about the train while the cleaners were in the Pullman cars knew that the train as made up was not complete and that the railroad company might switch in the other cars at any time. He gave no warning to plaintiff nor did he do anything for her protection. Scanlon himself testified that sometimes cars were backed in and coupled to the train while the cleaners were working, that no warning was ever given to the cleaners of such operations and that he did not remember an instance when a train or engine was backed in "that would cause any trouble."

A petition and bond for the removal of the cause to the Federal court were filed by the Pullman Company and the petition was properly denied. [See Schwyhart v. Barrett, 145 Mo. App. 332; Sears v. Railroad, 163 Mo. App. 711.]

Counsel for the Pullman Company assail the petition in their brief and argument on the ground that it fails to state any cause of action against that defend-

ant. They contend that all of the allegations read together amount to an assertion that the custom and rule of the employees of the railroad company were to allow the train to remain undisturbed while the cleaners were at work and, consequently, that the duty of the Pullman Company towards its cleaners did not require the promulgation and observance of rules to protect the cleaners against a possible negligent act of the servants of the railroad company that could not occur except in violation of the rules and customs of the yard.

On the other hand counsel for the railroad company attack the petition on the ground that it does allege that the custom of the yard allowed the switching crews to disturb the cars while the cleaners were at work "at any time that suited their work to remove any car of said defendant railroad company from said train for the purpose of making repairs thereon," and therefore that the sole duty of protecting the cleaners from possible injurious consequences resulting from such practice devolved on their master, the Pullman Company.

The petition is long and is not as clear as it should be but in answering to the merits defendants waived all formal defects and placed plaintiff in a position wherein she became entitled to have her petition construed in the light of the most friendly rules of interpretation. The question before us is that of whether or not the petition so construed is sufficient to support the verdict. The gist of the cause of action pleaded and contested at the trial is that it was an unusual practice of which plaintiff had not been informed and had no knowledge for the "Meteor" train to be moved while the cars were being cleaned and that each defendant owed the cleaners the duty of not moving the train in a manner to endanger their safety without giving them warning of such intended movement.

Without going into the details of the petition we hold it is sufficient to support the verdict and judgment and pass to the consideration of the demurrers to the evidence, taking up, first, the demurrer of the Pullman Company.

Plaintiff was the servant of the Pullman Company, engaged in her master's work which she was performing in the proper place and manner. She was in a position where a sudden and unexpected movement of the car would imperil her safety and where she was utterly helpless and unable to protect herself. She was compelled to depend on the care of others for her safety and it was the duty of her master in discharging its obligation to exercise reasonable care to provide its servant with a reasonably safe place in which to work, to adopt reasonable means to prevent the car from being moved while she was in a position so dangerous. Scanlon, the foreman, knew that three of the cars belonging to the train were absent and might be switched in at any time. Further he knew that such occurrence was so infrequent that plaintiff would not be looking for it and that she might be in a position of utter helplessness and danger. He had no control over the movement of cars by the railroad company, but he did have opportunity and means for protecting his servant either by flagging the cars on which the cleaners were working or by keeping a lookout for the missing cars and giving timely warning to his servants of their approach. In attempting to cast the whole burden of the duty he owed his servants onto the employees of the railroad company. Scanlon was guilty of a negligent breach of duty for which the Pullman Company should be held to respond in damages. The demurrer of that company was properly overruled.

Plaintiff was not the servant of the railroad company and, of course, was not subject to the orders of

that company, except such orders as were approved and adopted by her master for her guidance and protection, but she was on the property of the railroad company, not as a trespasser or licensee by sufferance but as an invitee or, as we said in Nelson v. Railroad, 132 Mo. App. l. c. 694, as a licensee by invitation.

The railroad company owed her the same duty it owed its cleaners. Knowing that she was at work in one of the sleeping cars and might be in a place of danger, it had no right to move the train without giving her warning and without first ascertaining that she was not in a dangerous place in the car. It was doing an unusual thing, knew that the cleaners would not be anticipating such movement, and it had no more right to depend entirely on the care of Scanlon for their protection than he had to rely on the care of the trainmen. Each defendant owed the cleaners a duty; both were recreant, and neither should be heard to excuse itself on the plea that the other was at fault. The court did not err in overruling the demurrer to the evidence offered by the railroad company.

The objections urged against the rulings of the court on instructions have been examined and are ruled against the defendants. The instructions are too long and include unnecessary details in their hypotheses, but we do not find them misleading or confusing and believe that a jury composed of men of ordinary intelligence would understand them. They are free from prejudicial error.

Finally it is urged that the verdict, which was for $2250, is excessive. The objection is based on the evidence of defendants. Evidence of plaintiff of a substantial character discloses injuries for which the award of damages made by the jury would be small compensation. The issue of the extent of the injuries is presented by all the evidence as one of fact and we cannot say that the jury exceeded reasonable bounds.

The judgment is affirmed. All concur.