B. M. GASTON v. J. HARRY PRICE et al.

Eastern Section. ——— —, ——.

544

Fowler & Fowler and Lee, Price, McDermott & Meek, all of Knoxville, for appellant.

Kennerly & Key, of Knoxville, for appellee.

PORTRUM, J.   This is a suit to construe a restrictive covenant; and to determine the right of the defendant Price to enforce it. The bill was filed under the declaratory judgment act, by B. M. Gaston, the owner of the restricted property, against Price, a prior purchaser from a common owner, and against the common vendor, as well as two intermediate vendors to the complainant, Gaston. The bill seeks to have the restrictive covenant declared void because it is indefinite, and removed as a cloud upon complainant's title; but it is valid in that it conferred or preserved an interest in the vendor which was attached to his remaining land, and since the vendor has disposed of all of his remaining land, the easement was lost to him and he is without right to enforce it, so for this reason the covenant is now invalid, and a cloud upon the title; that the defendant Price was a prior vendee who took a conveyance which did not contain a covenant charging the remainder of the tract with an easement in his favor, and there is no privity between the complainant Gaston and Price, though as a matter of law Price has no legal interest in the covenant nor right to enforce it; but in the event the court held otherwise, then the complainant sues in the alternative against his two immediate vendors for a breach of their covenant of warranty.

The defendant Price answered the bill, asserting the legality of the restrictive covenant, and averring that it was made for the specific benefit of his property, which was conveyed to him by the common vendor, who had agreed to charge the lot purchased by Gaston with the restriction for the special benefit of the lot purchased by Price. That the agreement to charge the property was an executed agreement under which his rights were fixed at the time of the purchase by the complainant Gaston's predecessors in title.   And, further, since his purchase he had acquired an interest in the covenant by a deed from his vendor executed after the conveyance to the complainant. The de-

fendant, Knoxville Real Estate Company, a former Tennessee corporation, which had surrendered its charter and was being liquidated through a liquidating committee, answered through its committee by joining in the answer filed by the defendant Price. The defendants, M. D. Arnold, Jr., and T. H. Johnston, the intermediate vendors between the Knoxville Real Estate Company and B. M. Gaston, also joined in the answer of the defendant Price, and thereby failed to take issue to his position. (Their course is a reminder of the criminal plea of nolle contendere.)

The material facts, briefly, are: The Knoxville Real Estate Company was engaged in the real estate business in Knoxville, and owned a large boundary of wooded land lying upon the Kingston Pike, which has developed into the first residential section of the City of Knoxville. This boundary fronted for about 500 feet upon the Kingston Pike, a boulevard or principal street through this residential section, and this strip of about 500 feet ran back for about the same distance where it spread out and covered a large acreage of land which was laid off for residential lots and remained accessible to the Pike by a roadway leading through the west boundary of the strip in question to the Kingston Pike. The lot which was afterwards purchased by Gaston lay next to the roadway leading from the Kingston Pike to the addition behind the lot in question, and the Price lot lay immediately to the east of the Gaston lot, and fronted about 100 feet on the Kingston Pike. These lots will be designated as the east and west lots. At the time of Price's purchase, the company tried to sell him the west lot but he decided he preferred the east lot and purchased it with the intention of constructing his house on a knoll about 250 feet back from Kingston Pike. This knoll or small ridge ran parallel with the Pike through the east and west lots and also to the east of the property on to the property owned by Shields who constructed his house upon the knoll. Price expected to construct a valuable residence upon the knoll and was apprehensive that the purchaser of the west lot would divide it and construct a building facing upon the roadway leading to the rear of the property and known as the Towanda Trail, and the rear of these houses would be in front and to the side of his lot and residence. And the purchaser might construct a residence, even in the event the lot was not subdivided, nearer the street than the Price house, and thereby injure Price's property. The real estate company, the vendor, recognized these objections, and orally agreed with Mr. Price to so restrict the use of the west lot so as to conform to the uses anticipated by Mr. Price. No covenant was placed in the Price deed, giving an interest in the land retained by the vendor, that Price could enforce against the vendor, and it was not anticipated that such covenant would be placed in the Price deed. However, when the company sold the west lot to Mr. M. D. Arnold, Jr., it did place the following restriction in the deed:

"Only one dwelling shall be erected on said lot about on line with Shields and Price."

Mr. Arnold sold this lot to the defendant Johnston by warranty deed which did not contain this restriction; and Mr. Johnston conveyed the property to the complainant Gaston by warranty deed which did not contain the restriction, but did refer to his chain of title for description. Mr. Arnold at the time of his purchase knew of the agreement between Price and the real estate company in reference to the restriction. Mr. Johnston was also advised by his attorney of the restriction contained in the Arnold deed, but Mr. Gaston purchased the property by warranty deed without actual notice of the agreement between Price and the realty company; his only notice was a constructive notice obtained in his chain of title.

Mr. Gaston purchased the property for the purpose of building a residence upon the lot but he thereafter suffered financial reverses and abandoned his purpose to construct a residence. He attempted to sell the lot to Mr. Price, who declined to buy it for satisfactory reasons. Mr. Gaston expressed to Mr. Price his purpose to construct an apartment house upon the lot, or to sub-divide it, or to sell it for these purposes; Mr. Price made known to him his agreement with the realty company and the restrictive covenant contained in the Arnold deed and asserted his right to rely upon it.

Mr. Price, after this controversy arose, went to the liquidating agents of the Knoxville Real Estate Company and procured a deed from them conveying to him whatever right or interest the company owned in the covenant, with a right to enforce it against the vendee. Thereupon Gaston filed the bill in this cause.

The chancellor decreed that the restrictive covenant was void because indefinite; that if valid it reserved an interest in the vendor only which attached to its remaining land. But the easement was an incident to the land which was lost to the vendor when it parted with the land. Therefore the vendor had no interest to convey when it made its second deed to the defendant Price and the restrictive covenant was a cloud upon the complainant's title which was ordered removed and the defendants Johnston and Arnold were dismissed. The defendant Price appealed, and the complainant Gaston filed the record for writ of error, assigning as error the action of the court in dismissing the bill as to Arnold and Johnston, in the event the court is of the opinion the covenant is a valid covenant.

The questions presented under Price's assignments are: Is the restrictive covenant valid? And has he such an interest in it that he can enforce it?

Counsel for the appellee then state that the question has been answered in the negative by this court in the case of Emory v. Sweat, 9 Tenn. App., 167, and that this answer is conclusive of the case.

In the Emory case, this court construed the restrictive covenant to be a valid one and the vendor could enforce it. A subsequent vendee, who had purchased one of the remaining lots from the vendor, joined with the vendor and sued for damages against the vendee Sweat for a violation of the covenant. His name was Henderson, and the court, in disposing of his claim for damages, held that there was no privity between him and the covenantor, Sweat, and that he acquired no legal interest in the restrictive covenant made by Sweat that would serve as the basis for a recovery in damages suffered by Henderson, sustained by the breach. The question decided was not Henderson's right to enforce the covenant by injunctive process of the court. In our investigation of the English and American cases dealing with the restrictive covenant, generally called an equitable easement, we have found none that would justify a recovery of damages suffered by a subsequent vendee, because of a breach of a covenant made by a prior vendee with the vendor. But the right of a subsequent vendee to restrain a violation of a restrictive covenant made by a prior vendee is recognized. This question was decided by our Supreme Court in the case of Laughlin v. Wagner, 146 Tenn., 654, 244 S. W., 475, where it is said:

"The restrictive clause in this deed being valid and not contrary to public policy (Devlin on Deeds, Section 991-b) and enforcible in equity by the original grantor and by a property owner who purchased other property from him in the vicinity who holds the property largely under similar restrictive clauses, it remained to apply to the situation shown to exist."

This case establishes and recognizes the doctrine of equitable easements, which is one not recognized in law and is enforced on the theory of an estoppel. Privity of contract is not necessary but notice of the prior undertaking must be brought home to the vendee before the doctrine or principles of estoppel can be applied. This notice must be either actual or constructive. This doctrine of restrictive covenants or equitable easements is defined and elucidated in the text-books on real property, deeds and equity jurisprudence. To illustrate the doctrine, we will quote extensively from Pomeroy's Equity.

"Section 1696. (Sec. 275.) Actions by purchaser of other lands. When it clearly appears that such restrictions are intended to inure to the benefit of other lands, at the time of conveyance or formerly belonging to the grantor, a subsequent grantee of such other parcels may enforce the restriction by injunction. The principle question to be determined in such cases is whether the intent is sufficiently clear to warrant the court in giving relief. It is a matter for construction of the words of the covenant, in connection with the surrounding circumstances. If the language is explicit to state the intent, the grantee's rights are admitted. Difficulty arises when the covenant merely restrains the use without indicating the beneficiary.

"Where an owner of a tract of land lays it out in building lots, making a plan showing the general building scheme, and sells in accordance therewith to various purchasers, inserting restrictions in all deeds, the intent will be inferred. The purpose of a restriction is merely to benefit all the land in the tract and to make an inducement for purchase. Accordingly, one grantee may enjoin a breach by another, or by one who takes with notice. Some courts have intimated that either a general building scheme or express declaration in the covenant is essential; but the better view seems to be that the intent may be otherwise determined."

The author cites the following note as authority for his last statement:

"The rules are summed up in DeGray v. Monmouth Heath Club House Company, 50 N. J. Eq., 329, 24 Atl., 388, as follows:

" 'The action is held not to be maintainable between two purchasers not parties to the original covenant, in which (1) it does not appear that the covenant was entered into to carry out some general scheme or plan for the improvement or development of the property which the acts of the defendant disregard in some particular. (2) It does not appear that the covenant was entered into for the benefit of the land of which complainant has become the owner. (3) It appears that the covenant was not entered into for the benefit of subsequent purchasers, but only for the benefit of the original grantor and his next of kin. (4) It appears that the covenant has not entered into the consideration of the complainant's purchase. (5) It appears that the original plan has been abandoned without dissent, while the character of the neighborhood has so changed that it defeats the purpose of the covenant, and to thus render its enforcement unreasonable.'

"All of the statements being fully supported by authorities, with the exception of the third. In probably the majority of the cases where injunctions have been granted, there has been a general building scheme. But it will be seen that such relief has been granted where there has been no such scheme."

The facts of this case bring it within the second designation, for it is insisted that it does appear that the covenant was entered into for the benefit of the defendant's land. But he is a prior and not a subsequent purchaser, and upon this question, Mr. Pomeroy says:

"Section 1697 (Sec. 275A). Actions by prior purchaser.—Difficulty arises where a prior purchaser of one of the lots attempts to enforce a restriction contained in the deed to a lot subsequently purchased from the common grantor. If the lots are embraced within a general building scheme, this is not held to be a practical difficulty, even though the deeds are silent as to any intention on the part of the grantor to impose restrictions on the future purchasers; the restrictions may be enforced by and against grantees, regardless of the order of their purchases. If there is no general scheme, the mere fact that

there is a covenant, similar to the plaintiff's, in the deed of a lot subsequently sold by the common grantor, does not give the plaintiff a right of action to enforce the covenant. There must, ordinarily, be a binding agreement made by the grantor at the time of the sale of the plaintiff's lot, to insert the restriction in the deed to the lot subsequently sold. The grantor's land thus becomes bound, in favor of the plaintiff, from the time of the first sale.''

In support of this text, the author cites in Note 19, the case, among others, of Doerr v. Cobbs; 145 Mo. App. 342, 123 S. W., 547, adding ''(An instructive case; bare intention of grantors to make the covenant inure to the benefit of all persons then or thereafter claiming under him is not enough, unless it is indicated to purchasers so as to affect them with notice when they bought.)''

This case was dealing with covenants which appear in both the vendee's deeds. We have been unable to find a case where the prior vendee is asserting the right to enforce the covenant contained in a subsequent vendee's deed and was not himself bound by a like covenant. See annotations on restrictive covenants, 21 A. L. R., 1281, supplemented in 33 A. L. R., 679, and in 60 A. L. R., 1219.

The grantor has a right to place any burden upon an estate he desires to place, but whether or not his vendee who is not granted the right can assert an equity in the premises made by the vendor is to be determined upon the general rules of equitable estoppel upon which this doctrine is based.

''It has been said that it is a principle upon which all the courts unite, that the right to equitable relief depends upon the following considerations:

''First, a preceding agreement in some form by which a restriction is imposed upon the lot owned or held by defendant, for the benefit of the lot owned or held by the plaintiff.

''Second, in case the agreement is made by the defendant's predecessor in title, notice of some form to the defendant of the fact and nature of the agreement, either from the language of the deed under which he holds, or otherwise.'' Coughlin v. Barker (1891), 64 Mo. App., 64.

''In making a conveyance the grantor has the legal right to impose a condition from any motive, it is immaterial what that motive is; and it has even been said that he may impose it in favor of property he does not own, if he sees fit to do so.'' Hays v. St. John's M. E. Church (1902), 196 Ill., 633, 63 N. E. 1040.

To quote from annotation 21 A. L. R., 1281:

''Nor is it necessary that there be any privity between the parties. It is not necessary, in order to sustain the action, that there should be privity either of estate or contract; nor is it essential that an action at law should be maintainable on the covenant; but there must be found somewhere the clear intent to establish the restriction for

the benefit of the party suing or his grantor, of which right the defendant must have either actual or constructive notice. Equitable Life Insurance Association v. Blunnen (1896), 148 U. S., 661, 43 N. E., 173.''

Conceding that the proof shows this restrictive covenant was made for the benefit of Price, and that he could have enforced the same against the first vendee, Arnold, who had actual notice of the agreement, then the question remains, Can he enforce it against the complainant Gaston, who had no actual knowledge of the agreement and is only charged with constructive knowledge of the contents of the Arnold deed?

We think the authorities support the proposition that before Gaston can be bound by the covenant, in favor of Price, he must have been charged with notice of the agreement between Price and his vendor. Counsel for Price insist that the covenant itself gives him this notice. And that the recitals of his deed call this covenant to his attention. It is true he is bound by the recitals of his deed and is put upon notice of the covenant. This covenant was notice to the purchaser that the original vendor had reserved to himself a legal interest in the estate conveyed to Arnold, and the purchaser took the property subject to the estate reserved by the vendor, the Knoxville Real Estate Company. There was nothing in the covenant to indicate, that Price also had an interest in the estate; this claim is based upon an equity and has to be established by oral testimony. There is nothing in the covenant to put the purchaser on notice of such an oral undertaking.

We cannot escape the conclusion that the constructive notice went only to the estate retained by the vendor, the Knoxville Real Estate Company, and did not put him upon inquiry to ascertain if any prior purchaser (not subsequent purchaser) had acquired an interest in the right retained by the vendor.

The defendant Price acquired no interest in the deed executed by the liquidating committee of the Knoxville Real Estate Company, for the reason that at the date of the deed the Knoxville Real Estate Company had parted with all interest in the land retained after the execution of the Price and Gaston deeds and before the execution of the last deed to Price.

''The covenant cannot be enforced by the grantor who created the covenant, nor by his heirs, after he or they have parted with all interest in any land benefited by the covenant.'' 4 Thompson on Real Estate, Section 3442.

The company at the time of its last deed had no interest in this subdivision.

After the chancellor had decreed that Price had no interest in the restrictive covenant that he could enforce, and that the Knoxville Real Estate Company had no interest in the covenant that it could enforce,

he then held the covenant void because indefinite, and removed it as a cloud upon Gaston's title. We think his action in this respect was error for the reason he could not adjudicate the validity of the restrictive covenant when there was no one before the court with an interest to defend. The subsequent purchasers from the Knoxville Real Estate Company may have or may not have acquired this easement; before this can be determined they should be before the court, in a proceeding of this kind. It is not sufficient to introduce witnesses who would testify that their deeds did not contain such provision, and the provision may not have been necessary in the deed; their rights cannot be determined until they are before the court and the provision cannot be removed as a cloud when there is no one before the court to defend. The court should have restricted its adjudication to the right of Price and the right of the real estate company, which in effect had transferred what rights it had to Price.

The decree will be modified as indicated, and in all other respects affirmed. In the lower court the complainant was unsuccessful in its claim against Arnold and Johnston, and should have been taxed with costs. The costs of the lower court and of this court are divided equally between the parties.

Snodgrass and Thompson, JJ., concur.