WILLIAM H. McKEE, Respondent, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, December 1, 1902.

1. **Negligence:** CONTRIBUTORY NEGLIGENCE: KNOWLEDGE OF DANGER: PASSING THROUGH TRAIN. Where a person is guilty of contributory negligence in attempting to pass through a standing train ready to start, yet if the company knows of his danger, or might with reasonable care know, and fails to give proper signals of the intended movement, the contributory negligence will not defeat a recovery.

2. ———: ———: PASSING THROUGH TRAIN. Passing through a standing train ready to start is ordinarily negligence.

3. ———: ———: MASTER AND SERVANT: STRANGER. There is a distinction between a stranger and a servant of a railroad cor-

poration, and while an attempt to pass through a train by a stranger would be negligence, whether such act is negligence on the part of a servant will depend on the circumstances.

4. ——: ——: ——: PASSING THROUGH TRAIN. Where danger is so obvious that with the utmost care it is still imminent so none but a reckless man would incur it, if the servant engages in the hazardous undertaking he assumes the peril; so in this case the attempt of the plaintiff to pass through a standing train ready to move was the act of a reckless man.

5. ——: ——: ——: CUSTOM LESSENING DANGER. If, however, at the place and time of the injury the custom of the de-defendant was to give certain precautionary signals of the movements of the train, with the special object of protecting its employees in passing through its trains, probably the danger would have been less obvious and the undertaking reasonably safe.

6. ——: ——: PLEADING: EVIDENCE: VARIANCE. A petition was bottomed on an alleged custom as to certain precautionary signals before moving trains, and the plaintiff's reliance upon same. The evidence failed to show any custom of signals except the ordinary signals and also the plaintiff's reliance thereon. *Held,* the variance was fatal, and the defendant only owed the plaintiff the duty to exercise every possible precaution for his safety while he was in the exercise of reasonable care and prudence.

Appeal from Buchanan Circuit Court.—*Hon. A. M. Woodson,* Judge.

Reversed.

*O. M. Spencer* and *H. J. Nelson* for appellant.

(1) The court erred in not sustaining defendant's demurrer to plaintiff's case, because plaintiff based his case solely on alleged customs as to climbing through between cars and as to bell signals by switch engines, and there was an entire failure of proof as to any such customs, either in relation to trains standing or moving on the east main line, or even in relation to cars standing or moving in the yard. It requires very different evidence to establish a custom. Anderson Law Dict., pp. 303 and 1070; 27 Am. and Eng. Ency. Law (1 Ed.),

pp. 741-2-3. (2) The court erred in not taking the case from the jury, because plaintiff's act in climbing in between the cars was negligent in itself and bars him from recovery. Lard v. Railroad, 12 Colo. 390; s. c., 21 Pac. 151; Hudson v. Railroad, 123 Mo. 449; Hudson v. Railroad, 101 Mo. 33; Gurley v. Railroad, 104 Mo. 231; Bean v. E. L. A. Corp., 50 Mo. App. 462; Corcoran v. Railway, 105 Mo. 404-5-6. Nor would the fact that there was a custom among fellow-employees to go between the cars, constitute any excuse for his rash act, even if such a custom were proved. 27 Am. and Eng. Ency. Law (1 Ed.), page 899, and numerous cases there cited. 16 Am. and Eng. Ency. Law (1 Ed.), page 462. Plaintiff knowingly selected a dangerous way, when a more safe one was apparent to him, and was therefore negligent as a matter of law. Baily, Master and Servant, secs. 1121-1123; Moore v. Railroad, 146 Mo. 582. (3) The court erred in submitting the case to the jury, because plaintiff was himself guilty of negligence contributing to the injury. He did not look south before he went in between the cars. It was his duty to look. Hudson v. Railway, 101 Mo. 31; Corcoran v. Railway, 105 Mo. 404. (4) The case should not have been submitted to the jury, because plaintiff based his case on alleged failure to follow a custom as to signals. He did not know of or rely upon any such custom, and hence cannot have the benefit of it even if it existed. He testified he did not rely on such a custom. Bailey, Master and Servant, sec. 3343; Wood, Master and Servant (1 Ed.), sec. 94; 27 Am. and Eng. Ency. Law, p. 714 and 748.

*Vories & Vories* for respondent.

(1) The plaintiff in this case was not only lawfully upon the railroad's property, but the act of the defendant made it necessary that he cross the tracks in question. It amounted to more than an invitation. (2) Where an employee of a railroad company is lawfully

in the yard of said company, it is the duty of those in charge of trains to give warning to such employees before moving trains; and this is even so in the absence of a rule or custom to that effect. 2 Thompson Commentaries on Negligence, sec. 1756, 1757; Kelly v. Railway and Transit, 95 Mo. 279; Wilkins v. Railway, 101 Mo. 106. (3) It is the duty of the employees in charge of an engine to look out for persons lawfully in the railroad yard, and if they do not, the company is liable, even though the party injured may have been negligent. Kelly v. Railway, 95 Mo. 279; Wilkins v. Railway, 101 Mo. 106; Mauerman v. Railway, 41 Mo. App. 351. (4) Employees may rely upon the rule or custom of a railroad to ring the bell or sound the whistle. Church v. Railway, 119 Mo. 216. (5) The question as to whether plaintiff relied upon the rule or custom to ring the bell, or, in other words, whether the failure to ring the bell was the proximate cause of the injury, was properly submitted in plaintiff's first instruction. Church v. Railway, 119 Mo. 216.

BROADDUS, J.—This is an action for negligence. Plaintiff sues to recover damages for injuries alleged to have been received May 2, 1901, while in the employ of defendant at its switch yards in the city of St. Joseph, Missouri. The allegations of the petition are substantially, that there were numerous switch tracks in said yard used in the handling of defendant's freight business, in which defendant employed a large number of men; that its freight depot was on the east side of said tracks; that on the west side thereof the defendant had provided for the use of its workmen a privy vault, which in order to reach they were compelled to cross said tracks and that it was their custom so to do, all of which was well known to defendant; that defendant's freight trains were constantly passing to and fro through said yards and over said tracks, so that it became dangerous for said workmen to pass from said yard to said vault on the west side as aforesaid; that defendant, in order to render it less dangerous to them

while passing over said tracks to said vault, adopted certain signals, such as the ringing of bells and other means, to be given when such freight trains were to be moved, so as to give its employees notice of such movements; that on said May 2, 1901, while so employed, it became necessary for plaintiff to use said vault, and while he was so crossing said tracks, on one of which was a freight train, and while he was in the act of climbing over the coupling of two of the cars of said train, defendant, negligently, without notice and in violation of a certain ordinance of said city of St. Joseph, caused said train to be moved, when it knew, or by the exercise of reasonable care might have known, of his danger; that plaintiff by said movement of the train was thrown from his balance and injured; and that at the time he was so injured he was relying upon the defendant to give the customary signal of the intended movement of said train.

The answer consisted of a general denial and allegations to the effect that the plaintiff was guilty of contributory negligence and had assumed the risk. The trial resulted in a verdict and judgment for the plaintiff from which defendant appealed.

On the trial a plat was introduced showing the location of the yards and tracks in question, by which it appears that immediately west and parallel with the switch tracks were two tracks designated as the east main line and the west main line, the east track being used for north-bound freight and passenger trains and the west track for south-bound trains. The train by which plaintiff was injured was standing on the track designated as the east main line. It was proved that plaintiff was injured at the time and place stated in his petition.

There was evidence tending to show that there was no signal given of the starting of said train at said time. It was also shown that it was the custom of the employees to cross said tracks in going to said vault, and that at times they crawled over the couplings between the freight cars standing on the tracks with

engines attached ready to move. It was also shown that it was the custom of the defendant before starting the movement of its freight trains to give a signal by the ringing of bells of such intended movement; but it was not shown that such signals were given for any special purpose—only that it was customary to give them. The ordinance of the city of St. Joseph, mentioned in the petition, was not read in evidence.

It was in proof that sometimes an engine was used in the rear to push freight trains going north as that part of the track was an up-grade. But when plaintiff made the attempt to go to the vault in question, he says he looked and saw no engine attached to the rear end of the train and that he could not see to the north or front end. There was, however, an engine at each end, although plaintiff further testified that as he did not think there was such an engine at the rear end and so did not rely on a signal to be given. But under all the circumstances and the position of the train ready for a departure north, he must have known there was a locomotive at the front end and that consequently the train was likely to be moved at any time.

On the conclusion of plaintiff's evidence the defendant submitted a demurrer to his case which the court overruled. At the close of the case the court gave four instructions at the instance of plaintiff and over the objections of the defendant. The defendant asked eighteen instructions, of which the court gave nine and refused the remainder. The contention of the defendant is that the petition did not state a cause of action; that the allegations thereof are not sustained by the evidence; and that the court committed numerous errors in giving plaintiff's instructions and in refusing those offered and not given for the defendant.

The theory of the plaintiff is, that the defendant by the location of the vault aforesaid, across the tracks from where its employees were engaged, was not only an invitation for them to cross the tracks in the use of said vault, but that they were compelled by the necessity of the circumstances to do so; consequently, that his act

in attempting to pass over said tracks and through the cars at the time he was injured, was lawful; and that the failure of defendant to give the required signal was negligence. Wilkins v. Railway, 101 Mo. 94, was a case wherein the deceased, who was in charge of a team in the city of St. Louis, left it at some distance from a street crossing and while beyond the crossing defendant's train backed from the north upon and covered the crossing leaving an opening about two feet in width. through which deceased on his return attempted to pass, but was caught and killed by a backward movement of the train. It was there held that the deceased might rightfully assume that a signal would be given before the train would be moved. In Kelly v. Railway, 95 Mo. 279, it was held: "When a plaintiff is guilty of contributory negligence, the company is nevertheless liable, if, by the exercise of ordinary care, after a discovery by defendant of the danger in which plaintiff stood, the accident could have been prevented, or if the company failed to discover the danger through the recklessness or carelessness of its employees, when the exercise of ordinary care would have discovered the danger and averted the calamity or injury." See also Mauerman v. Railway, 41 Mo. App. 351. In Church v. Railway, 119 Mo. 203, it was held: "An instruction asked by defendant that if the deceased was standing on the track as the train approached attending to his usual business there, it was his duty to watch out for the train, and if by looking he could have seen or by listening he could have heard the train coming in time to have gotten out of its way, and he failed to do so, the verdict must be for the defendant, though the engineer gave no signal, was properly modified by adding, 'unless the jury shall believe that deceased was thrown off his guard by such failure to give a signal.' "

The act of the plaintiff herein in attempting to pass through said train in the manner detailed would, under ordinary circumstances, be deemed negligence. Hudson v. Railway, 123 Mo. 445, was a case where, "The plaintiff attempted to climb over and between two flat

cars which had obstructed the crossing of a public street for a longer time than was permitted by a municipal ordinance on the subject; in so doing, he placed his feet beside the pinhead, which caught one of them when the cars were suddenly moved, without any previous warning of such a movement.'' Held, ''that, in getting over the cars, plaintiff assumed the obvious risks involved in the act.'' See also, Gurley v. Railway, 104 Mo. 231, and Bean v. Employer's Ass'n, 50 Mo. App. 459.

In the cases cited the circumstances were different from the one under consideration, for the relation of master and servant did not exist as it did here, and for that reason the same rule of law does not apply. The relation of master and servant stands next to that of parent and child, consequently the duty of the master to his servant is governed by different rules regulating his duty to a stranger. Had the plaintiff been a stranger, the defendant would have owed him no duty under the circumstances of this case. The question is, what duty did the defendant owe the plaintiff, its servant? In determining this question we must bear in mind the distinction between that of a servant and a slave, for the reason that a slave may be compelled to do that which a mere servant may refuse to do. The service of the one is compulsory; that of the other, voluntary— he may decline the service.

In the case of Fugler v. Bothe, 117 Mo. 475, certified from the St. Louis Court of Appeals, the facts were, ''that the deceased, an experienced carpenter, had been working for three weeks in the sideboarding of air shafts. He had finished three of them, standing on a plank on the inside of a shaft for that purpose. While sheathing the fourth he lost his balance, fell off the plank down the shaft and received injuries which caused his death.'' Held, ''That the danger being obvious and continuous, the deceased assumed the risk and the master was not liable.'' See, also, Steinhauser v. Spraul, 127 Mo. 541, ''Where the instrumentality with which a servant is required to perform service is so glaringly defective that a man of

common prudence would not use it, the master can not be held liable for damages resulting from its use." Huhn v. Railway, 92 Mo. 440.    In the case of Conroy v. Iron Works, 62 Mo. 39, the rule governing the question was succinctly laid down by Judge WAGNER: "When the defect is so glaring that, with the utmost care and skill the danger is still imminent, so that none but a reckless man would incur it, then if the servant will engage in the hazardous undertaking, he must be considered as doing it at his peril.    But if the defective machinery or appliances, though dangerous, are not of such a character that they may not be reasonably used by the exercise of skill and diligence, the servant does not assume the same risk."

The rule is well settled in this state that where the danger is so obvious "that with the utmost care and skill, the danger is still imminent, so that none but a reckless man would incur it, then if the servant will engage in the hazardous undertaking," he assumes the risk and acts at his own peril.    The plaintiff in his petition truly alleges that the undertaking on his part was a dangerous one, but that the precautionary signals adopted by the defendant, of the intended movement of its trains, lessened such danger.    But the danger is inferentially admitted to have existed, and the question for our consideration is, was it of such a character as that none but a reckless man would undertake it?    We think it was.

If the situation was such as required defendant's employees to pass over the freight trains on said tracks for the purpose mentioned, while with engines attached they were prepared at any moment to move, the risk said employees would incur in so crossing would be obviously dangerous, and such as no prudent person exercising ordinary care would undertake. If, however, the defendant had adopted as a custom certain precautionary signals of the movements of its trains with the special object and understanding of protecting from danger the employees going to and from said vault, perhaps the danger would have been

less obvious and the undertaking might have been reasonably safe to a prudent person in the exercise of due care. But no such custom was shown; only a general one of ringing a bell on the starting of a train which we know, as a matter of common knowledge, is customary with all railroads.

It would not do to say, in the absence of evidence, that the customary signals announcing the movements of trains were, under the circumstances of the case, given as special warning to employees attempting to pass over defendant's cars. The plaintiff failed to sustain the allegations of his petition in that respect. He also failed to show that he relied on any custom whatever for signals. He stated, on the contrary, that he did not so rely, because he saw no engine at the rear end of said train. Plaintiff's cause of action is bottomed upon the alleged custom and his reliance on the same. It was, therefore, a case of failure of proof. In the absence of such proof, the duty defendant owed to its employees was the exercise of every reasonable precaution for their safety whilst such employees were in the exercise of reasonable care and prudence on their part.

Under the facts of the case, plaintiff was guilty of contributory negligence and assumed the risk; therefore, he was not entitled to recover. For which reason, defendant's demurrer to the evidence should have been sustained. Cause reversed. All concur.