BARBARA VanCAMP, Respondent, v. WABASH
RAILROAD COMPANY, Appellant.

**Kansas City Court of Appeals, February 7, 1910.**

1. **MASTER AND SERVANT: Rules of Master: Contributory Negligence.** Where it is the duty of the master to prescribe rules for the safety of his servant, it is equally the duty of the servant to obey them; and if he does not, he is guilty of contributory negligence preventing his recovery of damages.

2. ————: ————: ————: **Car Repairer.** Where the rules of a railway company provided that any one on a standing car repairing it, should put out a blue flag, which was a warning to others not to disturb such car, and a car repairer went to work upon a car without putting out such flag, he was guilty of contributory negligence precluding recovery for an injury resulting to him by the car being struck by another car switched onto that track by the company's servants.

3. ————: ————: **Assumption of Obedience to Rules.** A switching crew have a right to assume that a car repairer, if on a standing car, will comply with the rules and put out a warning sign.

4. ————: ————: **Presumption.** It does not follow that a member of the switching crew saw the deceased standing on the car, if he looked for a warning flag on such car; since his attention may have been altogether occupied in ascertaining if the flag required by the rules was out

Appeal from Ray Circuit Court.—*Hon. Francis H. Trimble,* Judge.

REVERSED.

*J. L. Minnis* and *Lavelock & Kirkpatrick* for appellant.

(1) It was the duty of defendant to provide reasonable rules of safety for the protection of its employees; it was the duty of the employees to obey such rules, and for injuries received by the employees while violating the rules and in consequence of disobedience

thereof, no recovery could be had. The breach or violation of the master's known system and order of business by the servant amounts to such contributory negligence on the servant's part as to relieve the master from liability for injuries received by the servant while disobeying the rules. The demurrer to the evidence should have been sustained, and the peremptory instruction that the jury find for defendant should have been given. 20 Am. and Eng. Ency. of Law (2 Ed.), pp. 101 to 105; 26 Cyc., pp. 1267-8; 1 Labatt's Master and Servant, sec. 365, pp. 948-9; 1 White on Personal Injuries, sec. 437, p. 597; Hallihan v. Railroad, 71 Mo. 116-7-8; Schaub v. Railroad, 106 Mo. 92; Francis v. Railroad, 110 Mo. 395; Yongue v. Railroad, 133 Mo. App. 158. (2) Disobedience of defendant's rules and VanCamp's disregard for his own safety was negligence on his part, and why should the train crew be required to exercise so much care when he disregarded every safety? Davis v. Railroad, 159 Mo. 6, 7; Sharp v. Railroad, 161 Mo. 235-6; Tanner v. Railroad, 161 Mo. 511; Evans v. Railroad, 178 Mo. 514; Wheat v. St. Louis, 179 Mo. 579; Clancy v. Transit Co., 192 Mo. 657; McGrath v. St. Louis Transit Co., 197 Mo. 107; Brockschmidt v. Railroad, 205 Mo. 446; Sissel v. Railroad, 214 Mo. 528; Hall v. Railroad (Mo.), 118 S. W. 65; Schaub v. Railroad, 133 Mo. App. 451; Swearingen v. Railroad (Mo.), 120 S. W. 778. (3) The humanitarian doctrine has no place in this case. Hall v. Railroad (Mo.), 118 S. W. 1. c. 65. It was the duty of the employees of defendant to see if the car in question was protected by a blue flag; this was the danger signal they were required to look for. Brakeman Watts had but a moment to survey the field for signals or flags, and failing to discover any, his attention was then drawn to the switching; while throwing switches and uncoupling cars he must look at his work. With a trained eye he surveyed the field for danger signals, but finding none, his attention was then directed to open-

ing the switch and uncoupling the car. Van Camp having failed to exhibit the required warning, the train crew had no reason to anticipate repairs about the Southern car and they were not required to look further. Evans v. Railroad, 178 Mo. 517; Brockschmidt v. Railroad, 205 Mo. 446; Matz v. Railroad, 217 Mo. 300; Hall, v. Railroad (Mo.), 118 S. W. 65.

*Jas. L. Farris, Jr., S. A. Davis* and *Maurice G. Roberts* for respondent.

(1)   The demurrer to the evidence was properly overruled because Samuel Van Camp's violation, if any, of the rule of the defendant in failing to put up a flag did not contribute as a proximate cause to the injury, and the injury would have occurred even if the flag had been up. Under the evidence it was a question for the jury to determine whether the violation of the rule contributed as a proximate cause to the death of Samuel VanCamp.    Unless all reasonable men must draw the same conclusion from the evidence that the non-observance of the rule contributed as a proximate cause to the accident, the question should be submitted to the jury.    Instruction No. 4 submitted this issue only to the jury. Yongue v. Railroad, 133 Mo. App. 158; 26 Cyc. 1269, and cases cited; 34 American Digest, sec. 799, p. 1430; 20 Am. and Eng. Ency. Law (2 Ed), pp. 105 and 106; O'Mellia v. Railroad, 115 Mo. 221; Zumalt v. Railroad, 175 Mo. 288; Smith v. Powell, 10 Ohio Dec. 799; Dickson v. Railroad, 124 Mo. 140; Helfenstin v. Modart, 136 Mo. 608; Railroad v. Wynne (Tex. Civ. App.), 28 S. W. 1064. (a) It was the duty of defendant's employees at the place of the accident to look for a flag. If they failed to look for a flag before they "kicked" the car loose, then Van Camp's violation of the rule could not have contributed to the injury because, even if the flag had been up, they would not have seen it, and in this case there was evidence from which the jury could reasonably infer that the switching crew failed to

look for a flag, because their testimony that they did look, was contrary to the physical facts. Phippin v. Railroad, 196 Mo. 343; Lynch v. Railroad, 208 Mo. 23; Payne v. Railroad, 136 Mo. 583; McMarshall v. Railroad, 80 Ia. 757, 45 N. W. 1065; Railroad v. State, 64 Atl. 304; Hook v. Railroad, 162 Mo. 581; Volkmar v. Railroad, 134 N. Y. 222, 31 N. E. 870; U. S. v. Post, 128 Fed. 954; Lighthouse v. Railroad, 3 S. Dak. 518, 54 N. W. 320; Artz v. Railroad, 34 Ia. 159; Peters v. Railroad, 135 Ala. 533, 33 So. 332; Albrecht v. Railroad, 108 Wis. 530, 84 N. W. 882. (2) Proof that the defendant sent a detached car on its track through the railroad yards where men were known to be at work or where it was known that men might be and were likely to be passing, or where it was the duty of the defendant to have looked for flags or signals of car repairers, without a brakeman in charge, and without any means of controlling its momentum, is very strong evidence tending to prove negligence on the part of the defendant. Defendant's testimony shows that car repairers were constantly at work in all parts of the yards at Brunswick and including track No. 2, and that the switching crew knew this to be true. It was therefore, their duty to keep a look out for flags and car repairers. Lange v. Railroad, 115 Mo. App. 496; Lang v. Railroad, 115 Mo. App. 582; Dowd v. Railroad, 170 Mo. N. Y. 460; Eppstein v. Railroad, 197 Mo. 720; Railroad v. Dignam, 56 Ill. 487; Railroad v. Hunt, 140 Ill. 525, 30 N. E. 458; Rufsnyler v. Railroad, 90 Ia. 76, 57 N. W. 692; Railroad v. Patts, 92 Ky. 30, 17 S. W. 185; Promer v. Railroad, 90 Wis. 215, 63 N. W. 90; Shelby v. Railroad, 85 Ky. 224, 3 S. W. 157; Railroad v. O'Shields, 90 Ala. 29, 8 So. 248; Railroad v. Foxworth, 41 Fla. 1, 25 So. 338.

ELLISON, J.—Plaintiff is the widow of Samuel VanCamp, who was one of defendant's employees and was killed by being thrown from a standing car which

was struck by a car propelled against it by defendant's switching crew. The judgment in the trial court was for the plaintiff.

The principal difference between the parties to this controversy relates to conclusions drawn from facts either concealed, or shown by indisputable evidence. The deceased had been in defendant's service for several years. He was a car repairer, at Brunswick, Missouri. He got upon a car which was standing on a side track of defendant's railway, for the purpose of repairing some part of it. It became necessary to remove some of the coal out of the way and this he proceeded to do. While he was thus engaged he must have known that cars were being switched from one track to another. He knew that the rules of the defendant required that when a person was working upon a standing car like the one in controversy, he should first put up a warning, which consisted of a blue flag about eighteen inches square, attached to a stick or pole about three feet long and set out on the car. He failed to put out such warning. Those of defendant's employees engaged in switching had a car which they wished to put in on the track upon which was the standing car. The switch was thrown and the car was "kicked" onto that track and it ran on down to the standing car and struck it with such force as to cause deceased to fall off, when he was run over and killed. The point where the car was thus switched or "kicked" onto the track was about five hundred feet from the standing car.

The evidence establishes beyond any doubt the negligence of the deceased in getting upon the car and proceeding with his labor without putting out signal or warning. This is practically conceded, as well it may be, for the rules of the defendant cannot be violated with impunity by one of its servants. The Supreme Court of this State has well said: "It would be most unreasonable and unjust, after imposing upon the master the duty of promulgating a rule for securing the

safety of his servant, to permit the servant to recover from the master damages for injuries which the observance of the rule would have prevented. As the master is bound at his peril to make the rules, the servant should be equally bound at his peril to obey them. In such case the disaster is brought upon the servant by his own voluntary act, and he, and not the master who had discharged his duty, should bear the consequence." [Francis v. Railway Co., 110 Mo. 387.]

A text writer says on this subject: "Where an employee of a railroad company receives an injury which is caused by his action in direct violation of a reasonable rule, made by the company for the safety of its employees, of which rule he has notice and has promised to obey, he must be deemed guilty of contributory negligence and cannot recover damages from the company for such injury." [1 White's Personal Injuries on Railroads, sec. 437.]

But plaintiff advances a theory in avoidance of such negligence by contending that the case, as made by her, shows that the car would have been run into the standing car even though deceased had obeyed the rules and put out the blue flag. That is, she says the deceased's negligence was not the proximate cause, as the collision would certainly have occurred even though the warning had been up. The effect of plaintiff's theory is to throw the case under the humanitarian rule and that rule, for all practical purposes, was in reality called to plaintiff's aid by her instruction No. 4. But by whatever name plaintiff's theory may be designated, it will be covered by what we shall here say in disposing of the case. We will give to plaintiff the benefit of her statement of the situation. It is substantially this: That deceased was engaged on the standing car, getting ready to repair it by moving material out of his way. That his back was to the point, five hundred feet away, where the other car was being switched onto his track. That the switchmen could not have looked for a

warning flag on the standing car, for the reason that though the distance was five hundred feet, yet if they had looked for such warning they would have seen deceased standing on the car, since the view was unobstructed and deceased was a much larger object than the flag. We do not think plaintiff's conclusion follows. The switchman knowing of the standing car and the rules of his employer requiring a car repairer to display a blue flag by day and a blue light by night, would, while in the act of switching, be on the look out for a blue flag and not a man. His mind, if he was doing his duty, would be occupied with the thought of discovering whether there was the warning which the rules required him to look out for. When the occupation of the switchman, in the situation in which he was, is considered, it is going too far to convict him of being conscious of seeing deceased when he was looking for a signal. The recent case of Hall v. Ry. Co., 219 Mo. 553, 588, was where a trespasser was on a standing car which was struck by a car switched by a "kick," as the one in this case. It is there said that it was the duty of the engineer involved in that case to be watching for signals from the brakeman rather than cars. And that while the engineer had his face in the direction of the plaintiff, "this does not show that he saw the plaintiff." And that in such case, "the evidence is not sufficient to convict the engineer, nor the defendant, for the alleged negligence of the engineer." While the plaintiff on the standing car in that case was a stranger and a trespasser, yet so far as the point of seeing him was concerned, the cases are alike; since in this case the switchmen would not be expected to suppose that an employee would be on a car without displaying the required warning.

But there is ample ground for reversing the judgment aside from the foregoing. Let it be assumed, as stated by plaintiff, that the switchman saw deceased standing on the car five hundred feet away, with his

back to him and no warning flag out. What ought we to say, in fairness and reason, did that signify to the switchman? He would say to himself: "There is VanCamp, an old employee, familiar with the rules requiring him to display a warning flag. None is displayed, which means that he is only there for the moment and he will get off before this car reaches him." Is not the deceased's failure to put out the flag tantamount to saying to the switchman, if he could have been heard at such distance, "Let your car come on. I am going to get off," or "I will brace myself," or "I will sit down on the car?" If he had done either of these things he would not have been hurt. It is thus seen that the judgment is not sustained by good reason. If VanCamp's injury had not resulted in death and he had been the plaintiff, seeking damages, he would have occupied the position of inexcusable negligence himself and yet seeking to have the defendant's servants convicted on the merest conjecture or possibility. The happening of his death does not alter, in this respect, the character of the case.

The judgment is reversed. All concur.