EDGAR B. HARRIS, Respondent, v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, January 6, 1914.

1. **RAILROADS: Injury to Servant Working Under Car: Contributory Negligence.** The general rule is, that, unless those in charge of a railroad locomotive or train know that an employee is beneath a car, or unless the circumstances are such as to imply notice to them that such may be the case, or they are in some way charged with the duty to warn such employee, the latter, in going beneath the car, without giving any notice of his intention to do so, is guilty of such negligence as precludes a recovery for injuries sustained by reason of the car being moved in the course of the railroad company's business.

2. ———: ———: ———: Effect of Rule or Custom. Where there is a rule or an established custom to the effect that employees working about or beneath railroad cars are to be notified of the movement or disturbance of such cars, they may rely upon such warning being given; but if it is the rule or custom for the employee to put out a flag or other signal to indicate his presence about or beneath the car, he is guilty of negligence as a matter of law, if he fails to comply with such rule or custom.

3. ———: ———: ———. The conductor in charge of a work train standing on a siding waiting for a passenger train to pass directed a brakeman to couple the cars of the train together, and stated that, on the arrival of the passenger train, the work train would be "shoved" out. The brakeman got under one of the cars to do some work, without notifying any of the trainmen of his intention to do so. The conductor, subsequent to his conversation with the brakeman, upon receiving orders not to await the coming of the passenger train, gave the engineer the signal to pull out the train, and the engineer started the train while the brakeman was under the car. In an action by the brakeman for the resulting injuries, held that the statements made by the conductor concerning the movements of the train were neither a direction nor an assurance to plaintiff, and that he did not have a right to place himself under the car relying upon the assumption that the work train would not be moved until the passenger train had passed, or, if it was moved, that it would be "shoved" out and not "pulled" out and thus give him an opportunity to escape the wheels.

4. MASTER AND SERVANT: Injury to Servant: Evidence: Custom. In an action by a servant for injuries sustained, evidence concerning the custom obtaining among other crews with which plaintiff had worked is not competent.

5. RAILROADS: Injury to Servant Working Under Car: Contributory Negligence: Evidence: Custom. Evidence that a conductor in charge of a work train generally noticed where his men were before he gave a signal to start the train and that it was his duty to know where his men were, did not show a custom of the conductor not to start the train before notice to the crew of his intention to do so, and did not relieve a brakeman, going under a car to repair defects, of contributory negligence in failing to give notice to the trainmen of his intention to do so.

6. ———: ———: Evidence: Custom. The statement of a witness that it was the duty of the conductor in charge of a work train to know where his men were, before signaling the train

to start, was a mere legal conclusion of the witness, possessing no probative force.

7. ——: ——: **Custom.** Evidence that the engineer in charge of a work train, on receiving a signal from the conductor to start the train, generally whistled and then looked for a signal from the crew to let him know where they were, and that the conductor alone was authorized to give that signal, did not show such a custom as would entitle a brakeman, going beneath a car, to rely thereupon to the extent or failing to notify any of the trainmen of his intention so to do; and the engineer could not be held guilty of negligence in putting the train in motion in obedience to the conductor's signal, unless it was shown that he knew, or should have known, that the brakeman was in a dangerous position.

8. ——: ——: **Negligence of Engineer: Sufficiency of Evidence.** In an action for injuries to a brakeman of a railroad train, caused by the movement of the train, on a signal by the conductor, while the brakeman was making repairs under a car, evidence *held* to fail to show that the engineer, at the time he started the train, knew, or should have known, that plaintiff was in a dangerous position.

9. **TRIAL PRACTICE: Demurrer to Evidence: Rules of Decision.** In determining whether a demurrer to the evidence should have been given, the evidence should be taken as a whole and viewed in the light most favorable to plaintiff.

10. **RAILROADS: Injury to Servant Working Under Car: Negligence: Contributory Negligence.** In an action for injuries to a brakeman of a railroad train, caused by the movement of the train, on a signal by the conductor, while the brakeman was making repairs under a car, *held*, under the evidence, that defendant's agents and servants in charge of the train were not guilty of negligence, and that plaintiff's injuries were caused by his own negligence in going under the car without notice to any of the operatives of the train of his intention to do so.

11. **NEGLIGENCE: Contributory Negligence: Reliance upon Others.** No one has the right to rely entirely upon the obligation of others to observe care and caution, and himself neglect and disregard the dictates of prudence, but he must use reasonable precautions for his own safety, and then, in the absence of information to the contrary, he may act upon the presumption that others will not be negligent.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields*, Judge.

REVERSED.

*James F. Green* and *Robert T. Railey* for appellant.

(1) Upon the undisputed evidence plaintiff was guilty of contributory negligence, which precludes any recovery. White on Personal Injuries, sec. 415; Spencer v. Railroad, 130 Ind. 181; Fore v. Railroad, 144 Mo. App. 557; Cleary v. Packing Co., 71 Minn. 150; Whitcomb v. McNulty, 105 Fed. 845; Roach v. Railroad, 116 Ala. 360; Fay v. Railroad, 96 N. W. 638; Pool v. Railroad, 160 U. S. 438; McGraw v. Railroad, 45 Pac. 383, 22 Colo. 363; Wilkinson v. Railroad, 117 N. W. 611; McLean v. Chemical Co., 165 Mass. 5; Hulien v. Railroad, 82 N. W. 710; Montague v. Railroad, 82 Fed. 787; Campbell v. Railroad, 124 Iowa, 302; Nihill v. Railroad, 167 Mass. 52; O'Donnell v. Navigation Co., 63 N. Y. S. 290; Graham v. Railroad, 96 Va. 430; Ginnochio v. Railroad, 155 Mo. App. 163; Hitz v. Railroad, 152 Mo. App. 687, s. c. 160 Mo. App. 564. (2) Plaintiff was guilty of negligence as a matter of law in going under a car without notifying the engineer that he was going into a place of danger. Finuta v. Mfg. Co., —— Mo. App. ——, 156 S. W. 718; Smith v. Box Co., 193 Mo. 715; Nugent v. Milling Co., 131 Mo. 241; Dickey v. Dickey, 111 Mo. App. 314; 2 Bailey on Personal Injuries (2 Ed.), sec. 477; 1 White on Personal Injuries, sec. 415; Also cases cited under Point I. (3) Plaintiff had a safe way to protect himself while doing his work (if it was necessary to go under the car), and neglected to avail himself of such safe course. Moore v. Railroad, 146 Mo. 572; Hurst v. Railroad, 163 Mo. 322; Hirsch v. Bread Co., 150 Mo. App. 174; Crane v. Exhibition Co., 168 Mo. App. 301. (4) Plaintiff's evidence as to the duty of the engineer and brakeman was incompetent. Krueger v. Railroad, 84 Mo. App. 366; Stevens v. Laswell, 110 Mo. App.

160; Allen v. Transit Co., 183 Mo. 437. (5) Defendant's instructions Nos. 5, 6, 7, 10, 11 and 12 should have been given without the modification made by the court. Hall v. Railroad, 219 Mo. 587; Wheeler v. Railroad, 159 Mo. App. 587. (6) Plaintiff's instruction No. 2, as to the burden of proof, is erroneous. Hudson v. Railroad, 101 Mo. 13; Roberts v. Telephone Co., 166 Mo. 384; Sissel v. Railroad, 214 Mo. 526. (7) The court erred in refusing to give defendant's instruction No. 9. Henry v. Railroad, 113 Mo. 535; Zeis v. Railroad, 205 Mo. 638; Maxey v. Railroad, 95 Mo. App. 309; Feary v. Railroad, 162 Mo. 99. (8) Plaintiff's instructions were all erroneous, as they proceed on the theory that plaintiff made a case by simply showing that the engineer ought to have known plaintiff was under the car, although he had no actual knowledge of that fact; and there were no sufficient facts shown to put him upon inquiry. This, too, regardless of plaintiff's gross negligence in failing to notify the engineer or conductor that he was going under the car. Authorities, supra.

*George Safford* and *Barclay, Fauntleroy, Cullen & Orthwein* for respondent.

(1) What the plaintiff, as servant, did, was not necessarily and inevitably so dangerous that it is impossible to concede that any prudent man would have acted in such a manner, and the evidence showing that he complied with a custom, known to and expressly and impliedly sanctioned by his employer, is sufficient to turn the scale in his favor and secure for him the privilege of having the quality of his conduct determined by the jury. The course of action which he was pursuing at the time the injury was received was the one customarily followed by himself or his co-employees under similar circumstances, and this circumstance negatives the inference of negligence as a matter of

law.  Penny v. Stock Yards Co., 212 Mo. 309; Ranford v. Railroad, 126 Ga. 452; Pittman v. Railroad, 231 Ill. 581; Railroad v. Cane, 28 Ky. L. 1018; Railroad v. Pope, 98 Tex. 535; Cunningham v. Neal, 49 Tex. Civ. App. 613; Railroad v. Cooper, 33 Tex. Civ. App. 319; Railroad v. Key, 150 Ala. 641; Floan v. Railroad, 101 Minn. 113; Pool v. Railroad, 20 Utah 210; Ditberner v. Railroad, —— Wis. 138; Heine v. Railroad, 144 Mo. App. 443; Railroad v. Harrison, 73 Ga. 744; Kolb v. Carrington, 75 Ill. App. 159; Henry v. Railroad, 75 Iowa 84; Brady v. Railroad, 44 Colo. 283; Railroad v. Courtney, 30 Tex. Civ. App. 544; Railroad v. Walker, 125 S. W. 99; Railroad v. Lovell, 141 Ky. 249.  (2) The custom, usage or practice shown in this case was proved by the testimony of persons acquainted with the facts, and in every instance it was shown that the person testifying actually had adequate knowledge of the usage as a fact, and he was therefore qualified to testify and state what that usage was.  Lewis v. Railroad, 142 Mo. App. 591; Conner v. Railroad, 136 Ind. 430; Shield v. Railroad, 87 Mo. App. 644; Lawson, Usages and Customs, 101; 29 Am. and Eng. Ency. Law, 401.  (3) It has frequently been held that evidence that the plaintiff's position at the time of the accident was the usual and customary position was material for the purpose of showing that he had not taken an unusual and dangerous position.  Railroad v. Arnett, 137 Ala. 414; Duffey v. Consolidated Block Coal Co., 147 Iowa 225; Norris v. Packing Co., 124 Iowa, 748; Manning v. Laundry Co., 189 Mass. 231; De Cair v. Railroad, 133 Mich. 578; Stauning v. Railroad, 88 Minn. 480; Schwartz v. Railroad, 30 Ohio C. C. 394; Ham v. Railroad, 13023 Ohio C. C. 496; Galloway v. Railroad, 78 S. W. 32; Railroad v. Penn, 79 S. W. 624; Railroad v. Kennedy, 214 U. S. 502; Monaghan v. Northwestern Fuel Co., 140 Wis. 457; Railroad v. Bearden, 31 Tex. Civ. App. 58; Railroad v. Waller, 27 Tex. Civ. App. 44; Overby v. Mears Min. Co., 144

Mo. App. 363; 3 Labatt's Master & Servant, 3524. (4) The system of rules or methods adopted by the master for the conduct of his business forms a part of the contract of hiring and are binding on both master and servant. The violation thereof by the master to the injury of the servant is culpable negligence. Lewis v. Railroad, 142 Mo. App. 590; Jordon v. Railroad, 202 Mo. 418; Railroad v. Burton, 79 S. W. (Ky.) 823; Railroad v. Heck, 17 A. & E. R. Cas. 389; 4 Thomp. Neg. (2 Ed.), sec. 4163; Penn. Co. v. Whitcomb, 111 Ind. 212; Wharton, Neg., secs. 205, 233; Luebke v. Railroad, 63 Wis. 91; Sobieski v. Railroad, 41 Minn. 169; Railroad v. Murphy, 50 Ohio, 135; Railroad v. McElyea, 71 Tex. 389, 1 L. R. A. 411. (5) When the master, as in the case at bar, adopts a system of notification of danger the servant has a right to rely upon such notification, and the master is guilty of negligence if he omits the customary signal. Lewis v. Railroad, 142 Mo. App. 590; Jordon v. Railroad, 202 Mo. 418; Speed v. Railroad, 71 Mo. 303; Railroad v. Rhea (Tex.), 84 S. W. 428; Barker v. Railroad (Ky.), 21 S. W. 340; Railroad v. Schultz, 19 Ohio 639; Ring v. Railroad, 112 Mo. 220; 1 Labatt, Master & Servant, p. 452, sec. 209; Anderson v. Mill Co., 42 Minn. 424; Anderson v. Railroad, 8 Utah 128; Railroad v. Barker, 17 Ky. L. 424; Britton v. Railroad, 47 Minn. 340; Railroad v. Holcomb, 9 Ind. App. 211; Amato v. Railroad, 46 Fed. 464; Smith v. Air Line Co., 132 N. S. 824; Railroad v. Craft, 16 C. C. A. 834; 4 Thomp., Neg (2 Ed.), secs. 4067, 4167. (6) The customary method of the defendant in the particular respect in question is always competent to explain the acts of the parties and may be considered on the issue of defendant's negligence and plaintiff's freedom from contributory negligence. Lewis v. Railroad, 142 Mo. App. 590; Stock Yards v. Godfrey, 198 Ill. 288; Bachant v. Railroad, 187 Mass. 392; Encyclopedia of Ev., p. 474.

ALLEN, J.—This is an action to recover damages for personal injuries suffered by plaintiff, while in the employ of defendant company, and alleged to have been sustained by reason of the negligence of defendant's agents and servants. Plaintiff recovered, and the case is here upon defendant's appeal.

At the time of plaintiff's injury, to-wit, August 21, 1909, he was employed as brakeman upon a "work train" of defendant, and had been so employed and working with the train crew thereof since the ninth of the same month, a period of twelve days. Upon the day in question this work train consisted, it seems, of about twenty-one cars and the engine and caboose; and prior to the time when plaintiff received his injury, it had been standing for some time upon a siding at Bushong, Kansas, waiting for a passenger train, known as No. 4, to pass that place. It appears that the tracks at this point extend nearly east and west, and that the train was standing west of the station at this place, the caboose being near the latter. It seems that, as the train was then made up, there were three cars between the caboose and the engine; then came the engine, which was headed west, and beyond or west of that was what is termed a "ledgerwood" car, which is a work car, equipped with certain machinery, and beyond that about seventeen "flat" cars. While the train was thus waiting at this place, it had been separated in order to leave open a public crossing a little distance west of the depot. In other words the train crew "cut the crossing," as it is termed, leaving the "ledgerwood" car, and all the other cars beyond that, west of the crossing, and the engine, three cars and caboose east thereof.

It appears that the train was thus standing on the side track, about noon of the day in question. Plaintiff testified that the conductor and other members of the train crew left it to go to lunch, but that he remained in the caboose and ate his lunch there, and af-

terwards shaved himself; that while he was shaving, the conductor returned and told him to go and "couple up the crossing" when he had finished shaving, saying that when No. 4 came they would "shove out." When plaintiff had finished shaving, he "coupled up the crossing," i. e., caused the cars to be moved together and coupled. It appears that thereafter plaintiff started to "go over" or look over the train, going along and testing the air-brake connections, etc. He thus went along nearly the entire train until he came to the second or third car from the "head end," i. e., the west extremity of the train, which was about fourteen or fifteen car lengths from the engine. He testified that he saw some loose taps on the "draft timbers" beneath this car, such timbers being situated above the trucks at the west end of the car. He thereupon crawled under the car to tighten these taps, without notifying anyone of his intention so to do. This placed him, it seems, immediately in front of or east of the wheels of the west truck of the car.

It appears that after the conductor had directed plaintiff "to couple up the crossing," the latter consumed perhaps ten or fifteen minutes in completing his shaving, then coupled the cars at the crossing. What time elapsed after that before he was injured is a matter in dispute, but plaintiff testified at the trial that it was about ten minutes. During this latter period, i. e., after the crossing had been coupled up, and while plaintiff was going over the train, the conductor received word that passenger train No. 4 had been "ditched," and he thereupon signalled the engineer to pull out the train toward the east. The engineer, after blowing his whistle three times in quick succession, as it seems, at once proceeded to move the train toward the east, or to "pull out," as the trainmen called it, since the greater part of the train was then back of the engine as it thus moved. Plaintiff at this time was underneath the car aforesaid, and situated

immediately in front of the rear trucks thereof. He attempted to get out from under the car, but in doing so his arm was caught under the wheels and mangled so that it was necessary to amputate it. And. this suit is for the damages and loss thereby sustained.

Appellant's brief before us is directed chiefly to the action of the trial court in overruling its demurrer to the evidence; though other assignments of error are made. And appellant's position is, that no negligence was shown on the part of its agents and servants in charge of the train; and that plaintiff, in going under the car as he did, without notice to the conductor, engineer or anyone else of his intention to do so, was guilty of such negligence as to preclude a recovery for the injuries thereby sustained.

Plaintiff introduced in evidence a statute of the State of Kansas, in force at the time of the injury, the essential part of which is as follows:

"Every railroad company organized or doing business in the State of Kansas shall be liable for all damages done to any employee of said company in consequence of any negligence of its agents, or by any mismanagement of its engineers or other employees, to any person sustaining such damage; provided, that notice in writing that an injury has been sustained, stating the time and place thereof, shall have been given by or on behalf of the person injured to such railroad company within eight months after the occurrence of the injury; provided, however, that where an action is commenced by the injured person within said eight months, it shall not be necessary to give said notice."

This action was begun in the circuit court of the city of St. Louis, returnable to the April term, 1910, of said court, and within eight months after plaintiff received his injuries.

Defendant, on the other hand, placed in evidence a decision of the Supreme Court of the State of Kansas, showing that the doctrine of comparative negli-

gence does not obtain in the courts of said State, but that the latter recognize and enforce the doctrine of contributory negligence prevailing in this State; said case being that of Mo. Pac. R. R. Co. v. Walters, 78 Kas. 39, 96 Pac. 346.

I. There can be no doubt, we think, that the general rule must obtain that unless those in charge of a train or locomotive know that an employee is beneath a car, or unless the circumstances are such as to imply notice to them that such may be the case, or they are in some way charged with the duty to warn such employee, the latter, in going beneath a car, without any notice whatsoever of his intention so to do, is guilty of such negligence as to preclude a recovery for injuries sustained by reason of said car being moved in the course of the conduct of the railroad company's business.

On this question, in general, a text writer says: "Just as it is contributory negligence for a stranger to climb over stationary cars, because of the great danger involved in the undertaking, it is held contributory negligence for an employee or third person to crawl under a car or locomotive without first notifying the party in charge of it of such intention on his part." [1 White, Personal Injuries on Railroads, sec. 415.]

But whether or not an employee should be held guilty of negligence as a matter of law, in going beneath a car without notice or warning to others of his presence there, must of course depend upon the circumstances involved. The case before us differs considerably from those in which a car repairer or car cleaner is at work upon a car, which forms no part of a train, but which has been placed upon a side track, or somewhere in the railroad company's yards for the purpose of being repaired or cleaned; though it is

somewhat analogous to such cases. There may, of course, be either a rule or an established custom to the effect that men so working about or beneath detached cars, standing upon side tracks or in railroad yards, are to be notified or warned of the movement or disturbance of such cars; and under such circumstances they may rely upon such warning being given. On the other hand, it may be the rule or custom for an employee so working upon or beneath a car to put out a flag or other signal to indicate his presence there; and where such is the case he is generally, if not universally, held guilty of negligence as a matter of law where he fails to give such warning.

In Kettlehake v. Car & Foundry Co., 171 Mo. App. 528, 153 S. W. 552, the action was for the death of a car repairer who, while working under a car, was run over by reason of a train of cars striking the same. The evidence went to prove an established custom on the part of the defendant's employees in charge of its trains to give warning of the approach of a train or locomotive to cars situated as was the one that was being repaired; and there was evidence *pro* and *con* as to whether this custom had been complied with. This court held that the facts were sufficient to make out a case for the consideration of the jury; it not appearing that the deceased was required to give notice of his presence beneath the car, but that defendant's employees in charge of its train should have known that he was there, repairing the car which had been placed there for that purpose, and, under the facts in evidence, were charged with a duty to warn him.

And in Weaver v. Railroad, 170 Mo. App. 284, 156 S. W. 1, the plaintiff was injured while cleaning a Pullman car standing in the yards of the defendant railroad company. There was evidence tending to show that it was an unusual practice, and one of which the plaintiff had not been informed and of which she had no knowledge, for a train to be backed against one

of these cars while it was being thus cleaned. There was no rule or custom shown requiring any flag or other signal to be displayed showing that cleaners were at work in the car, but the cars were left upon this track for this express purpose, which the defendant's employees in charge of its train knew. The Kansas City Court of Appeals held that the defendant railroad company owed plaintiff the duty of not moving the train in a manner to endanger the safety of plaintiff and other cleaners at work upon the train, without giving them warning of such intended movement thereof.

In Illinois Central Railroad Co. v. Panebiango, 227 Ills. 170, the plaintiff, a track laborer, lived in a "boarding car," which was standing upon a side track coupled with others and with the brakes set. He was injured while crawling beneath the car in going for water for cooking purposes, as was the custom of such laborers at the time. It was held that the defendant company owed him the duty of not suddenly moving the cars without notice or warning, when it knew, or was charged with notice, that he and other such laborers were accustomed to crawl under the car in going for water.

But in Van Camp v. Railroad, 141 Mo. App. 344, 125 S. W. 530, a car repairer was killed by reason of the car upon which he was working being struck by another car switched upon the same track by the defendant's servants. The company's rules provided that one at work repairing such a standing car should put out a blue flag as a warning to others not to disturb the car. The deceased, at the time in question, was at work upon the car without putting out such flag; and he was held to be guilty of negligence, as a matter of law, precluding a recovery by his widow for his death.

And in Renfro v. Railway Co., 86 Mo. 302, the deceased, a car repairer, likewise went under a car for the purpose of repairing it without putting out a flag,

or having some one on watch, as the rules required, and it was held that because of his negligence in the premises the plaintiff, his widow, could not recover for his death.

In Alabama, etc., Ry. Co. v. Roach, 116 Ala. 300, plaintiff was a car inspector, and on the day of the accident several cars were standing upon a track in defendant's yards. Other cars were being continually run in upon the various tracks. Plaintiff went under one of the standing cars to inspect it, without giving notice to the yardmaster, switch-foreman or anyone else of his intention to do so, and without putting out any signal or warning, and was injured by reason of other cars being run against the car which he was thus inspecting. It was held that he was guilty of such negligence as to preclude a recovery. The court said: "The rule is well settled upon sound principles of law that the proximate contributory negligence of a plaintiff will defeat a recovery based upon the simple negligence of the defendant. . . . If these facts do not show contributory negligence as a matter of law, the rule had better be abolished." [See, also, Southern Pacific Co. v. Pool, 160 U. S. 438.]

II. It will be readily seen that the cases to which we have just referred turn upon the question as to whether, under the facts of the particular case, it was the duty of the deceased or injured employee to give warning of his presence upon or beneath the car, or whether it was the duty of the defendant's servants in charge of its locomotive or train to give warning of any movement, or disturbance of the car in question. In the instant case the car upon which plaintiff attempted to make some slight repairs formed a part of a train standing upon a siding, with locomotive attached and all coupled up and connected, in condition to be moved at any time. Plaintiff admits that he notified neither the conductor nor the engineer of his in-

tention to go beneath the car; and all of the evidence tends to show that no one about the train knew that he had done so. His case, however, is bottomed upon the theory that the circumstances were such as to show negligence on the part of the conductor and the engineer; and that they should have known that it was likely or probable that he would place himself in a dangerous position in the performance of his duty in "going over" the train and that therefore they were guilty of negligence in moving the train, without giving him sufficient warning to enable him to get out of danger; and that he was guilty of no negligence, under the circumstances.

In Spencer v. Railway Co., 130 Ind. l. c. 183, an employee went beneath a locomotive for the purpose of cleaning it, while it was standing upon a "switch track" and was injured by the engineer putting the locomotive in motion. The court said:

"It was not negligence on the part of the persons under whose direction he (plaintiff) was working to order him to clean the engine which, at the time, was standing still on the track. They had the right to presume, although he was inexperienced in the work, that he would exercise some degree of care to avoid injury. They did not order him to go under the engine, or, for any thing that appears in the complaint, had any reason to suppose that he would place himself in that dangerous position. Atlas Engine Works v. Randall, 100 Ind. 293.

"It is not alleged that he notified the engineer or other persons in charge of the engine that he was going under it, or that they had any notice or knowledge of that fact. Under these circumstances it does not appear that the employees in charge of the engine were guilty of negligence in putting it in motion; but it does appear that the appellant was guilty of negligence contributing to the injury in placing himself in this dangerous position without first warning the engi-

neer. It was the assumption of a needless risk on his part. The general averment of want of negligence on his part is controlled by the specific allegations of fact which show that he was negligent.''

In Norfolk R. Co. v. Graham, 96 Va. 430, the plaintiff was injured while in defendant's employ as a helper to the ''overhauler'' in the defendant's railway yards. He went beneath a car, to which a locomotive was attached, without the knowledge of the engineer in charge thereof, and was injured by the movement of such locomotive and car. The court said: ''He (plaintiff) was in a position to see all and hear all that occurred, and when he went under the car he must have known that he was going into a place of danger, and that no one had been charged with any particular duty to look out and warn him of approaching danger. To go under a car, under such circumstances, to which an engine was attached, without notifying the engine man of his purpose, was an act of negligence. The facts in proof establish that the peril he incurred in going under the car was such that a man of ordinary intelligence must have seen and understood. This indiscretion on his part was the immediate cause of the injury which he sustained.''

In Wilkinson v. Railroad, 105 Minn. 300, a fireman went under a locomotive to clean out an ash pan, after side switching had been done at a station and the train made up, without notifying the conductor or brakeman of what he was doing. Some one connected the airbrakes in such a manner as to force a piston rod down upon his leg, whereby he was injured. It was held that he was guilty of negligence, and that the trial court properly ordered judgment for the defendant, notwithstanding a verdict for plaintiff.

III. In the instant case, respondent contends that the conductor was negligent in giving a signal to move the train, in view of what he had previously said to

the plaintiff when he directed the latter to couple up the crossing; and also in violating an alleged custom not to give a signal to move the train without seeing that the various members of the crew were in places of safety. As to the first of these, the theory is that the conductor had assured plaintiff that the train would not be moved until passenger train No. 4 had arrived; and furthermore that the train would be *shoved* out and not *pulled* when it did move. And it is argued that plaintiff was entitled to rely upon the assumption that the train would not move until No. 4 passed, and that when it did so it would proceed in the direction opposite that in which it was actually moved.

It is true that had the passenger train not been "ditched," and had this train continued to wait for its arrival, plaintiff would doubtless have escaped injury. And it may be that, had the train been *shoved* out, instead of *pulled,* plaintiff would have had time to escape from beneath the car before the trucks at the farther end thereof reached him. But neverthless we think that what the conductor said to him with respect to the intended movement of the train was nothing in the way of an assurance to him as to the future movements thereof. In fact, it was neither a direction nor an assurance to him. The only order or direction given him was to couple up the crossing. The conductor then added that when No. 4 arrived they would leave, or, as plaintiff says, would "shove out." As an experienced railroad man, plaintiff must have known that the movements of the train were subject to such orders or reports as the conductor might at any time receive. It appears that this work train had no time schedule, but that it was moved by orders of the trainmaster or superintendent, given to the conductor; and plaintiff testified that the entire train was under the control of the conductor. It cannot be well believed that at the time these words in question were

spoken by the conductor, there was any idea involved
of an assurance to plaintiff that the train would in no
event be moved until the passenger train should ar-
rive, so that plaintiff would be justified in placing
himself in such a dangerous position as he did. Plain-
tiff doubtless knew, as well as anyone else, that they
were then waiting for the passenger train to pass; but
he also should have known that contingencies might
arise which would cause his train to be moved sooner.
According to his testimony it must have been nearly,
if not quite, half an hour after the conductor directed
him to couple up the crossing before he went under
the car in question; and according to the defendant's
evidence the period of time must have been consider-
ably longer. And we think that he did not have the
right to place himself in such a perilous position, re-
lying solely, if he did so rely, upon the assumption
that the train would not be moved until the passenger
train should pass, or that the train, when moved, would
proceed west and thus give him some opportunity to
escape the wheels.

IV. And so far as concerns the alleged custom on
the part of the conductor to look out for members of
the train crew, we may say that no custom was here
shown such as to relieve plaintiff of negligence in go-
ing under the car without notice to anyone of his in-
tention to do so. And no rule of defendant company
in the premises was shown. It appears that plaintiff
had been with this train crew for a period of but
twelve days; that during this time two Sundays in-
tervened, upon which they did not work, leaving but
ten days in which he had worked as a member of this
crew. He had previously worked elsewhere for the
greater part of two years as a brakeman. He under-
took to show what had been the custom with other
crews with whom he had worked, but the trial court
properly refused to allow this, requiring plaintiff to

show either a general, universal custom, or the custom of the conductor in charge of this crew. As to the latter, an effort was made to show that it was the established custom for the conductor of this train to see that members of the crew were in places of safety before he gave a signal to move the train. But even if such a custom, extending only over the short period of ten days, could here avail plaintiff anything (as to which we express no opinion), we may say that no such custom was in fact shown.

With respect to the giving of a signal by the conductor to move the train, plaintiff testified:

"Well, the conductor generally notices where his men are before he gives it. Q. What is that? A. I say the conductor generally notices where his men are before he goes, or—because if he did not he is liable to leave somebody. . . . Q. It is his duty to know where the men are? A. Yes, sir."

This is the sum and substance of plaintiff's evidence on this score; and which we may say is diametrically opposed to that adduced by defendant respecting this question. And this cannot be said to constitute any evidence of a custom such as plaintiff here invokes. So far as concerns the last question and answer, it does not go to prove a custom, but attempts, in a general way, to show what was the *duty* of the conductor in the premises. It is based upon no rule or custom shown, and is a mere legal conclusion of the witness, and without probative force.

V. Plaintiff also attempted to show that the engineer was negligent in starting the train as he did, without waiting for another signal after he had sounded his whistle. And in this connection plaintiff testified that, during the time that he was working with this crew, the engineer, upon receiving a signal to move the train "generally whistled," and that after doing so, he looked for a signal from the crew to let him know where they were. He was then asked:

"Who of the crew were authorized to give him that signal?" He answered: "The conductor." Q. "Anybody else?" A. "No, sir." Q. "What is that?" A. "No."

This does not show such a custom as would entitle plaintiff to rely thereupon and subject himself to great peril; but it accords with plaintiff's other testimony (and which must in the nature of things be true) to the effect that the movements of the train were controlled entirely by the conductor. That two signals were to be thus given the engineer is refuted by all the other evidence in the case; but giving plaintiff the full benefit of his testimony on this score, it is quite apparent that it does not show that the engineer was required to wait for signals from the various other members of the train crew after receiving a signal or signals from the conductor to move the train. And while it might be shown that the conductor thus violated a rule or established custom to see that members of the crew were all in places of safety before giving a final signal to move the train (which, as we have said, was here not made to appear), the engineer could not be convicted of negligence in putting the train in motion, in obedience to the conductor's orders, unless, indeed, it appear that the engineer then knew, or should have known, that plaintiff was in a dangerous position, so that to so move the train would be likely to injure him.

VI. And in this connection plaintiff further relies upon the alleged negligence of the engineer in this, that, in going over the train, plaintiff from time to time broke the air connections, and that the latter caused a noise to be made in the air pump on the engine, which informed the engineer that some one was "going over the train." And there was evidence to the effect that the engineer, a short time before receiving the signal to move the train, had heard such a

noise. This, however, can avail the plaintiff nothing, for the reason that it appears that such noise might be likewise made, and was often made, by the operation of a valve upon the caboose, and further, for the reason that the evidence is quite clear that such noise could in no way indicate that an employee was beneath a car. On the contrary, it would indicate that an employee thus engaged in looking after the air brake connections could not be beneath a car, as was plaintiff; but that he might be between the cars. It appears that one could test or adjust the air brake connections without placing himself in any great danger, and that, in case he had stepped between two cars to reach the same, when the engineer whistled, indicating that he was going to move the train, he could readily step from between the cars without injury. The engineer knew this and knew that the noise which he had heard a short time before did not indicate that any one was, even at that time, in danger by the movement of the train, at least if he blew his whistle, as he was required to do. As to the latter, all of the evidence is that he did sound his whistle three times. Plaintiff himself says that he thought he heard the whistle—at least that he thought that he heard "something like the whistle," and which caused him to start to get out from under the car.

VII. Plaintiff's evidence went to show that it was in the line of his duty to inspect the cars when the train stood upon a siding or switch track and to make repairs, if necessary, but it did not show that it was his duty to crawl beneath a car under such circumstances, without notice; and the other evidence in the case is to the effect that in such cases the engineer was notified, so that the train might not be moved, and that each member of the crew was supposed to look out for his own safety.

The evidence as a whole, and viewed in the light most favorable to plaintiff, as it should be viewed for the purposes of the demurrer, we think fails to show that plaintiff's injuries resulted from negligence on the part of defendant's agents and servants in charge of its train. It is conceded that plaintiff placed himself beneath the car without notice to anyone of his intention to do so. It was an extremely hazardous undertaking, and one we think of such a character as to be termed reckless. He was not justified in taking such a risk relying merely upon the assumption that the train would not be moved, when and as it was moved, or that the precautionary signals adopted by defendant for the movements of its trains would lessen such danger, when he knew that there was a perfectly safe course to pursue, viz., to notify the engineer of his intention. [See McKee v. Railroad Co., 96 Mo. App. 671, 70 S. W. 922.]

No one has the right to rely entirely upon the obligations of others to observe care and caution, and himself neglect and disregard the dictates of prudence. He must use reasonable precautions for his own safety, and then in the absence of information to the contrary he may act upon the presumption that others will not be negligent. "The obligation to exercise due care is mutual and correlative. It does not mean that one may disregard all the laws of prudence himself and yet require of his neighbor to observe caution in protecting him against his own negligence." [Clark v. Ry. Co., 127 Mo. l. c. 213, 29 S. W. 1013.]

If there can be said to be any negligence here shown on the part of defendant's servants in charge of its train—which we think the evidence fails to establish—nevertheless the plaintiff's own case shows contributory negligence on his part precluding a recovery for the injuries so unfortunately sustained by him. Or, to put it differently, but which amounts to the same thing, his own negligence, and not that with

which defendant is charged, must be regarded as the proximate cause of his injury.

It follows that the judgment should be reversed; and it is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.